HMG/JKMcD:USAO#2013R00794

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES | : | CRIMINAL NO. WDQ-14-310 |
| v. | : | (Wire Fraud; 18 U.S.C. § 1343; |
| | : | Money Laundering, 18 U.S.C. § |
| JEFFREY BRIAN COHEN, | : | 1957; False Statements To An |
| | : | Insurance Regulator; 18 U.S.C. |
| Defendant. | : | § 1033(a); Aiding and Abetting, |
| | : | 18 U.S.C. § 2; Forfeiture, 18 |
| | : | U.S.C. § 982) |

...oOo...

### SUPERSEDING INDICTMENT

### COUNT ONE

The Grand Jury for the District of Maryland charges:

### INTRODUCTION

At times material to this superseding indictment:

1. Defendant **JEFFREY BRIAN COHEN ("COHEN")** was the President and Chairman of the Board of Indemnity Insurance Corporation RRG (hereinafter referred to as "IICRRG").

2. IICRRG was a Delaware corporation that acted as a "risk retention group," which is a captive insurance company. IICRRG was subject to extensive state regulation, in particular, regulation by the Insurance Commissioner of the State of Delaware ("Delaware Insurance Commissioner").

3. **COHEN** previously controlled a District of Columbia corporation called Indemnity Insurance Corporation of DC, Risk Retention Group ("IICDCRRG"), which was a

1

predecessor entity to IICRRG and operated as a risk retention group and captive insurance company subject to regulation by the Commissioner of the District of Columbia Department of Insurance, Securities and Banking ("DC Insurance Commissioner").

4. IICRRG and IICDCRRG were located at 950 Ridgebrook Road, Suite 1500, Sparks, Maryland.

5. Both IICRRG and IICDCRRG provided general liability insurance, liquor liability insurance, and excess liability insurance coverage to their customers and policy holders, which were individuals and companies involved in the entertainment industry, such as nightclubs, concert tours, and special events.

6. IICRRG and IICDCRRG operated in many jurisdictions within the United States, including California, Connecticut, Delaware, the District of Columbia, Florida, Pennsylvania, Maryland, New Jersey, New York, Nevada, Virginia, and Texas.

7. In or about 2012, IICRRG insured more than 3,000 policyholders, and collected over $25 million in premiums.

8. The Delaware Insurance Commissioner and the DC Insurance Commissioner were charged by law with the responsibility of protecting insurance policyholders and the general public by regulating insurance companies and risk retention groups and their products to ensure among other things, that insurance companies and risk retention groups have the ability to pay claims.

9. Pursuant to the laws and regulations of Delaware and the District of Columbia, IICRRG and IICDCRRG had to submit quarterly unaudited financial statements to the Delaware Insurance Commissioner and the DC Insurance Commissioner, respectively. In addition, IICRRG and IICDCRRG had to submit yearly financial statements audited by independent

accounting firms along with the opinion of the accounting firm on whether the financial statement of the insurance company stated its financial position in accordance with Generally Accepted Accounting Principles (GAAP). In addition, the Delaware Insurance Commissioner and the DC Insurance Commissioner had the authority to conduct their own financial examinations of IICRRG and IICDCRRG.

10. A.M. Best, which was headquartered in Oldwick, New Jersey, was an independent insurance rating agency which developed its own ratings for insurance companies and risk retention groups such as IICRRG and IICDCRRG.

11. Marcum LLP ("Marcum") and BDO USA LLP ("BDO") were independent accounting firms that provided auditing services to many publicly traded as well as private companies, such as IICRRG and IICDCRRG.

12. BNP Paribas and the Royal Bank of Canada ("RBC") were large financial institutions based outside the United States.

13. RBC Bank was a division of the RBC, had its headquarters in North Carolina, and had its deposits insured by the Federal Deposit Insurance Corporation ("FDIC"). In or about June 2011, PNC Bank purchased RBC Bank.

14. First Insurance Funding ("First Insurance") was located in Northbrook, Illinois. First Insurance was one of the largest premium finance companies in the United States, and provided loans to persons or entities who sought to finance the costs of insurance premiums. In connection with a premium financing agreement, an individual or company typically signed a premium finance agreement, First Insurance paid the insurance premium to the insurer, such as IICRRG, and the customer repaid the amount of the premium payment, plus interest, to First Insurance.

15.     SCOR Reinsurance Company was a French based financial services company that sold reinsurance policies to insurance companies, such as IICRRG and IICDCRRG, to allow the insurance companies to reduce their exposure to financial risk by transferring the risk to the reinsurance company.

16      U.S. RE Corporation was a company headquartered in Pearl River, New York, which brokered reinsurance policies issued by other companies, such as SCOR Reinsurance Company, to insurance companies, such as IICRRG and IICDCRRG, to allow the insurance companies to reduce their exposure to financial risk.

17.     The Light Group LLC ("Light Group") was a company that operated and managed multiple Las Vegas nightclubs and lounges located within properties owned by MGM Resorts International, such as the Bellagio Casino and Hotel and Mandalay Bay.  The Light Group was required to purchase insurance from companies meeting certain liquidity and size requirements.

18.     Susquehanna Bank had its deposits insured by the FDIC and operated in multiple states, including Maryland.

19.     GoDaddy.com was a Delaware corporation that provided internet domain registration, website hosting, and other internet related services to customers.

20.     Individuals and companies seeking to establish a website or email domain had to register the domain name with a domain name registrar, such as GoDaddy.com.

## OTHER COHEN ENTITIES

21.     **COHEN** had a controlling ownership interest in a complicated web of different companies, including but not limited to the following:

  a) RB Entertainment Ventures, LLC ("RB Entertainment"), which was incorporated in Delaware and was a 99% owner of IICRRG;

  b) LMNH Inc. ("LMNH"), which was a Delaware holding company for the risk bearing entities that **COHEN** operated. **COHEN** owned 100% of LMNH;

  c) The Agency, LLC ("The Agency"), which was an insurance producer, owned by IDG, incorporated in Delaware, and licensed in Maryland from in or about August 2006 to in or about February 2014; and

  d) IDG Companies, LLC ("IDG"), which was a Delaware company, based in Sparks, Maryland, and formed in or about June 2006. **COHEN** was the sole member of IDG and its President.

## THE SCHEME TO DEFRAUD AND ITS OBJECTS

22.     Beginning in or about January 2008, and continuing until in or about the fall of 2013, in the District of Maryland and elsewhere,

**JEFFREY BRIAN COHEN,**

the defendant herein, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud insurance policyholders and prospective insurance policyholders, and to obtain more than $100 million in insurance premiums, by means of materially false and fraudulent pretenses, representations, and promises, regarding the financial status of IICDCRRG, IICRRG, and other **COHEN** controlled entities to insurance policyholders, prospective insurance policyholders, A.M. Best, BDO, Marcum, the DC Insurance Commissioner, and the Delaware Insurance Commissioner.

## OBJECT OF THE SCHEME TO DEFRAUD

23.     It was the object of the scheme to defraud for **COHEN** to misrepresent the financial status of IICDCRRG and IICRRG to the DC Insurance Commissioner and the Delaware Insurance Commissioner, IICDCRRG's and IICRRG's independent accounting firms, Marcum and BDO, and the rating agency A.M. Best, to secure authority to operate as an insurance company and a favorable rating, so that **COHEN** could market insurance policies to policy holders and prospective policy holders, and obtain premium payments that **COHEN** could use to operate his businesses and enrich himself.

## MANNER AND MEANS

### Financial Rating Agency and Auditors

24.     It was part of the scheme to defraud that **COHEN**, IICRRG and IICDCRRG obtained financial ratings from A.M. Best and touted the A.M. Best ratings to potential policyholders, policyholders, and regulatory agencies.

25.     It was part of the scheme to defraud that **COHEN** transmitted and caused to be transmitted false and fraudulent documents to A.M. Best in order to obtain financial ratings for IICDCRRG and IICRRG that were not based on the companies' true financial condition.

26.     It was part of the scheme to defraud that **COHEN** transmitted false and fraudulent emails, management representation letters, financial statements, and other documents to Marcum and BDO so the auditors would provide an unqualified audit opinion on IICDCRRG and IICRRG financial statements that **COHEN** then and there knew were false and fraudulent.

27.     It was part of the scheme to defraud that **COHEN** created, and caused to be created, false and fictitious financial documents, including but not limited to the following:

a) A March 2008 bank statement, purportedly from RBC Centura Banks, Inc., showing that LMNH had a bank account ending in 6654 with an account balance of $12,533,657.29.

b) A letter of credit, number BPW700-11A-IIC-1, purportedly issued on or about May 27, 2009, to the DC Insurance Commissioner by BNP Private Services Private Wealth Advisors, Ltd., in favor of IICDCRRG, up to the aggregate amount of $47 million, and expiring on December 31, 2009.

c) A January 2009 bank statement, purportedly from BNP Paribas, reflecting that LMNH had an account balance of $47,595,968.95.

d) A bank confirmation from a fictitious entity called RBCI, purportedly showing that IICDCRRG had a bank account ending in 6652 with a balance of $10 million as of December 31, 2009.

e) A bank confirmation dated February 4, 2011, purportedly from RBC Government Demands, showing that IICDCRRG's bank account ending in 6652 had a balance of $10 million.

f) A bank confirmation dated February 21, 2012, purportedly from RBC Government Demands, showing that IICRRG's bank account ending in 6652 had a balance of $1,450,293.

g) A bank confirmation dated March 1, 2013, purportedly from RBC Government Demands, showing that IICRRG's bank account ending in 6652 had a balance of $5,097,276.

h) A bank confirmation dated April 22, 2013, supposedly from Susquehanna Bank, showing that IICRRG had $5.1 million in unencumbered cash on deposit at the bank.

**False Representations To Insurance Policyholders And Potential Insurance Policyholders**

28. It was part of the scheme to defraud that **COHEN** obtained money and attempted to obtain money from insurance policyholders and potential insurance policyholders of IICDCRRG and IICRRG based on financial ratings, financial audits, and insurance regulatory approvals that **COHEN** fraudulently obtained.

29. It was part of the scheme to defraud that **COHEN** caused IICDCRRG and

IICRRG to write insurance policies exceeding the companies' financial ability to pay in the event of a liability determination.

29. 30. It was part of the scheme to defraud that **COHEN** altered and caused to be altered reinsurance documents obtained from companies involved in reinsurance, such as U.S. RE Corporation and SCOR Reinsurance Company.

31. It was part of the scheme to defraud that **COHEN** caused IICDCRRG and IICRRG to make false and fraudulent representations to insurance policyholders and potential insurance policyholders concerning the financial resources available to IICDCRRG and IICRRG from reinsurance companies, such as SCOR Reinsurance Company, in the event of a large insurance liability determination.

**Premium Financing**

32. It was part of the scheme to defraud that **COHEN** opened a bank account in the name of Monahan and O'Brien LLC ("M&O") at RBC Bank.

33. It was part of the scheme to defraud that **COHEN** sent false and fraudulent emails from his email account jcohen@iicdc.com to First Insurance.

34. It was part of the scheme to defraud that **COHEN** falsely claimed to First Insurance that M&O was a business manager handling several large artists.

35. It was part of the scheme to defraud that **COHEN** claimed to First Insurance that M&O was a business located at 1314 East Las Olas Blvd Suite 615, Fort Lauderdale, FL 33301 when **COHEN** then and there knew that the address was the location of a mailbox he had rented.

36. It was part of the scheme to defraud that **COHEN** prepared false and fraudulent premium financing applications on behalf of business entities, which he caused to be submitted

8

to First Insurance, even though these entities had not applied to IICDCRRG or IICRRG for insurance or financing.

37.  It was part of the scheme to defraud that **COHEN** claimed to First Insurance that the insureds' business manager, M&O, would repay the premium financing loans, plus interest, on behalf of the loan applicants, when **COHEN** then and there knew that he controlled M&O, the supposed insureds were not purchasing these policies, and in certain cases, the supposed insureds were fictional entities.

38.  It was part of the scheme to defraud that business entities controlled by **COHEN** obtained more than $9 million through the premium financing loans made by First Insurance.

**Insurance Regulators**

39.  It was part of the scheme to defraud that **COHEN** caused IICDCRRG and IICRRG to issue insurance policies exceeding the coverage limits authorized by the DC Insurance Commissioner and the Delaware Insurance Commissioner.

40.  It was part of the scheme to defraud that **COHEN** transmitted and caused to be transmitted false and fraudulent audited and unaudited financial statements for IICDCRRG and IICRRG to the DC Insurance Commissioner and the Delaware Insurance Commissioner.

41.  It was part of the scheme to defraud that **COHEN** made false statements to representatives of the Delaware Insurance Commissioner concerning the financial status of IICRRG, the financial institutions at which IICRRG had funds, and the contact information for the financial institutions of IICRRG.

## THE CHARGES

42.    On or about the dates set forth below, in the District of Maryland and elsewhere,

**JEFFREY BRIAN COHEN,**

the defendant herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, that is the following emails, with attached financing applications:

| COUNT | DATE | DESCRIPTION | INTERSTATE WIRE COMMUNICATION DETAILS |
|---|---|---|---|
| 1 | 11/06/2009 | Email from jcohen@iicdc.com to [intentionally omitted] @firstinsurancefunding.com, regarding premium financing of $630,375 | Sparks, Maryland to Villa Park, Illinois |
| 2 | 01/26/2010 | Email from jcohen@iicdc.com to [intentionally omitted] @firstinsurancefunding.com, regarding premium financing of $995,235 | Sparks, Maryland to Villa Park, Illinois |
| 3 | 6/25/2010 | Email from [intentionally omitted] @marcumllp.com to jcohen@iicdc.com, among others, which transmitted the Financial Statements of IICDCRRG for 2008 and 2009, and specifically referenced a letter of credit in the amount of $47 million | Melville, New York, to Sparks, Maryland |
| 4 | 12/9/2010 | Email from jcohen@iicdc.com to [intentionally omitted] @ambest.com, enclosing a copy of the A.M. Best rating for IICDCRRG, dated December 9, 2010 | Sparks, Maryland to Oldwick, New Jersey |
| 5 | 12/17/2012 | Email from jcohen@iicdc.com to multiple individuals working at BDO and using email addresses ending in bdo.com, and attaching documents regarding bank accounts | Sparks, Maryland to Grand Rapids, Michigan |

18 U.S.C. §1343  
18 U.S.C. § 2

18 U.S.C. §1343

## COUNTS SIX & SEVEN

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1-41 of Count One of this Superseding Indictment are hereby incorporated by reference as though fully set forth herein.

2. On or about dates listed below, in the District of Maryland and elsewhere,

**JEFFREY BRIAN COHEN,**

the defendant herein, did knowingly engage, and attempt to engage, in the monetary transactions listed below, by, through and to a financial institution, affecting interstate commerce, in criminally derived property having a value greater than $10,000, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343:

| COUNT | DATE | MONETARY TRANSACTION |
| --- | --- | --- |
| 6 | 2/17/2010 | A wire transfer in the amount of $666,666.67 from a Fidelity Bank account in the name of IDG to a Bank Leumi USA account in the name of a law firm. |
| 7 | 4/15/2010 | A wire transfer in the amount of $200,000 from a Fidelity bank account in the name of IDG to a PNC Bank account in the name of **COHEN**. |

18 U.S.C. §1957
18 U.S.C. § 2

## COUNTS EIGHT - TWELVE

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1-41 of Count One of this Superseding Indictment are hereby incorporated by reference as though fully set forth herein.

2. On or about March 6, 2013, **COHEN** used the services of GoDaddy to create the internet domain "Susquehanna-Bank.com."

3. On or about March 18, 2013, **COHEN** entered into a rental contract with the United States Postal Service ("USPS") to use PO Box 1183, Cockeysville, Maryland. In his application, **COHEN** used the name "Susquehanna," with a listed address of 950 Ridgebrook Rd, Ste 1500, Sparks, MD 21152.

4. On or about the dates set forth below, in the District of Maryland and elsewhere,

**JEFFREY BRIAN COHEN,**

the defendant herein, was engaged in the business of insurance affecting interstate commerce, and did knowingly, willfully, and with the intent to deceive, make materially false statements and reports, and materially overvalue property and security, as set forth below, in connection with a financial report and documents presented to the Delaware Insurance Commissioner and her agents, for the purpose of influencing the actions of the Delaware Insurance Commissioner and her agents.

| COUNT | DATE | FALSE STATEMENT AND OVERVALUATION OF PROPERTY |
|---|---|---|
| 8 | 11/15/2012 | **COHEN** caused IICRRG to file its unaudited financial statements for the third quarter of 2012 with the Delaware Insurance Commissioner, which stated that IICRRG had $5.1 million in unencumbered cash on deposit at "Bank 4." |

| 9 | 1/31/2013 | **COHEN** sent a letter to the Delaware Insurance Commissioner and Delaware Insurance Regulators which stated that IICRRG had $5.1 million in unencumbered cash on deposit at Susquehanna Bank. |
|---|---|---|
| 10 | 3/18/2013 | **COHEN** sent an email to the Delaware Insurance Regulators stating that Susquehanna Bank only offered "a P.O. Box for mail confirms," and further that Susquehanna Bank could confirm the balance in the IICRRG account if the regulators corresponded with the email address "[name intentionally omitted]@susquehanna-bank.com." |
| 11 | 4/1/2013 | **COHEN** sent an email to the Delaware Insurance Regulators attaching a confirmation form stating that the mailing address for written account confirmations by Susquehanna Bank was the following: Susquehanna Bank, Confirmation Dept., PO Box 1183, Cockeysville, MD 21030 |
| 12 | 4/22/2013 | **COHEN** caused a fax to be submitted to the Delaware Insurance Commissioner and Delaware Insurance Regulators that stated Susquehanna Bank had confirmed that IICRRG had $5.1 million in unencumbered cash on deposit at Susquehanna Bank |

18 U.S.C. § 1033(a)
18 U.S.C. § 2

## **FORFEITURE**

1.   The allegations contained in Counts One through Seven are realleged and incorporated here for the purpose of alleging forfeiture.

2.   Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction under Counts One through Five of the Superseding Indictment.

3.   As a result of the offenses set forth in Counts One through Five, the defendant,

**JEFFREY BRIAN COHEN,**

shall forfeit to the United States all property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including **$100,000,000** and all interest and proceeds traceable thereto.

4.   Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982, in the event of the defendant's conviction under Counts Six and Seven of the Superseding Indictment.

5.   As a result of the offenses set forth in Counts Six and Seven, the defendant,

**JEFFREY BRIAN COHEN,**

shall forfeit to the United States any and all property involved in and traceable to the property involved in such offenses, including **$866,667.67** and all interest and proceeds traceable thereto.

## SUBSTITUTE ASSETS

6. If any of the **$100,000,000** and **$866,667.67** described in this Superseding Indictment as being subject to forfeiture, as a result of any act or omission of the defendant,

**JEFFREY BRIAN COHEN,**

(a) cannot be located upon the exercise of diligence;

(b) has been transferred, or sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code §§ 981 and 982, Title 21, United States Code § 853, and Title 28, United States Code § 2461, to seek forfeiture of any other property of the defendant up to the value of **$100,866,666.67**.

18 U.S.C. § 981
18 U.S.C. § 982
21 U.S.C. § 853
28 U.S.C. § 2461

*Rod J. Rosenstein/hmg*
ROD J. ROSENSTEIN
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**   Date: 9/16/14