IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>UNITED STATES OF AMERICA,<br>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>CRIMINAL NO.:  WDQ-14-0310</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>JEFFREY BRIAN COHEN,<br>Defendant.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Jeffrey Brian Cohen is charged with wire fraud,[1] aggravated identity theft,[2] money laundering,[3] making false statements to an insurance regulator,[4] and obstructing justice.[5]  ECF No. 78 (third superseding indictment).  Pending are pretrial motions.[6] A hearing was held on May 4, 2015.[7]  For the following reasons, the motions will be resolved as discussed herein.

---

[1] 18 U.S.C. § 1343 (2012).

[2] 18 U.S.C. § 1028A (2012).

[3] 18 U.S.C. § 1957 (2012).

[4] 18 U.S.C. § 1033(a) (2012).

[5] 18 U.S.C. §§ 1512, 1513 (2012).

[6] Because all of Cohen's motions have been considered, his motion for leave to file additional motions after the April 1, 2015 deadline, ECF No. 190, will be denied as moot.

[7] Trial is scheduled to begin on June 1, 2015.  ECF No. 59.

I.   Background

    A.   Facts[8]

From 2008 to 2013, Cohen operated a group of related insurance companies. ECF No. 284 at 1.[9] Until August 2013, Cohen was the President, Chairman of the Board, and majority owner of the companies. *Id.* at 1-2. In 2012, the Delaware Insurance Commissioner ("Commissioner") began investigating Indemnity's financial stability. *Id.* at 2. Delaware regulators were concerned about Indemnity's ability to collect $20 million owed by IDG and $5.1 million purportedly on deposit at Susquehanna Bank. *Id.*; Gov. Ex. 1 (January 2, 2014 Delaware Court of Chancery Opinion, attached to the search warrant affidavit)(hereinafter "Del. Ct. Chancery Op.") at 3. The $20 million receivable potentially overstated Indemnity's assets and "should have been written down or written off as uncollectable." ECF No. 284 at 2 n.1.

---

[8] The facts are from Cohen's motions and replies, ECF Nos. 76, 135, 129, 256, the government's responses, ECF Nos. 159, 284, 299-1, and the rough motions hearing transcript ("Hr'g Tr."). Exhibits attached to the government's omnibus response to Cohen's motions to suppress, ECF No. 284, are designated as "Gov. Ex.").

[9] Those companies include Indemnity Insurance Corporation, Risk Retention Group of DC ("IICDCRRG"), Indemnity Insurance Corporation, Risk Retention Group ("IICRRG")(together, "Indemnity"), RB Entertainment ("RB"), LMNH, Inc. ("LMNH"), The Agency LLC, and IDG Companies ("IDG"). ECF No. 284 at 1. The companies were incorporated in Maryland, the District of Columbia, or Delaware. *Id.*

In May 2013, the Commissioner obtained a seizure order from the Delaware Court of Chancery authorizing the regulatory takeover of Indemnity.  Del. Ct. Chancery Op. at 1-2.  In July 2013, after examining Indemnity under the seizure order, the Commissioner filed a petition to liquidate Indemnity "in light of (i) acts of fraud by Cohen and (ii) Indemnity's unsound financial condition."  *Id.* at 3.  Thereafter, Delaware Department of Insurance representatives and Cohen used office space at 950 Ridgebrook Road, Sparks, Maryland ("950 Ridgebrook Road").  ECF No. 284 at 3.

On August 5, 2013, Cohen resigned as Indemnity's Chairman of the Board, and the Board removed him from officer positions.  Del. Ct. Chancery Op. at 8.  "[A]fter August 5, Cohen's only connection to Indemnity was as the owner of [RB], an entity that purports to own 99% of Indemnity's equity by virtue of having been issued a zero-dollar insurance policy by Indemnity."  *Id.*[10] On September 1, 2013, "Cohen was banished" from 950 Ridgebrook Road.  ECF No. 76 at 5.

In September 2013, Indemnity sought to modify the seizure order because Cohen had interfered with the company "and the efforts of the Commissioner."  Del. Ct. Chancery Op. at 9.  The

---

[10] However, "Indemnity's [B]oard claims that there is no record that Indemnity ever issued stock to [RB] in exchange for genuine economic consideration."  Gov. Ex. 1 (April 9, 2014 Delaware Supreme Court Opinion)(hereinafter "Del. Sup. Crt. Op.") at 49.

amended seizure order "clarif[ied] that Cohen was prohibited from accessing Indemnity's IT systems and from communicating with Indemnity's employees and business associates." *Id.* at 10. Although the seizure order "had granted the Commissioner title and control over all of Indemnity's assets," the amended seizure order confirmed that those assets "included intangible assets like Indemnity's information systems and electronic records." *Id.* at 11.

On November 1, 2013, the U.S. Attorney's Office for the District of Maryland began a criminal investigation of Cohen. ECF No. 284 at 6.[11]

On April 30, 2014, FBI Special Agent Jennifer Perry obtained Jeffrey Miceli's consent to search 950 Ridgebrook Road. ECF No. 299-1 at 1-3. Miceli acted as the Commissioner's agent following Indemnity's and IDG's regulatory takeover. ECF No.

---

[11] Cohen contends that the investigation began in 2010. ECF Nos. 135 at 1; 129 at 1. Discovery provided to Cohen included a document opening an investigation labeled "318A-BA-111302" and dated May 10, 2010. ECF Nos. 135 at 1; 159 at 1 & n.1. Agent Perry testified that she had opened an investigation in 2010 after receiving a complaint about Indemnity's financial activities, but that it was closed when the U.S. Attorney's Office declined to prosecute. Hr'g Tr. at 48-49. Thereafter, a new investigation of Cohen and Indemnity began in 2013. ECF No. 159 at 1. The 2013 investigation is numbered "196B-BA-3510086." ECF No. 159 at 2; *see also* Gov. Ex. 6 (FBI Memorandum of Cohen's June 24, 2014 interview).

299 at 1.[12]   During the search agents took video and still
photographs of the premises and received a copy of the floor
plan, a "server inventory[,] and printouts of [miscellaneous]
network details."  ECF No. 299-1 at 2, 4.

On May 5, 2014, Agent Perry obtained a warrant to search
950 Ridgebrook Road for evidence of mail and wire fraud and
false statements to insurance regulators.  Gov. Ex. 1 at 6.  The
affidavit supporting the search warrant incorporated the January
2, 2014 Delaware Court of Chancery Opinion by Vice Chancellor
Laster sanctioning Cohen for violating previous orders about the
seizure of Indemnity, and the April 9, 2014 Delaware Supreme
Court Opinion affirming the Court of Chancery's Orders.  *See*
Gov. Ex. 1.

On May 8, 2014, federal agents conducted the search and
seized about 50 boxes of documents.  ECF No. 284 at 6-7; Gov.
Ex. 2.  The documents "were taken to the FBI document
laboratory, scanned, and produced to [Cohen] in searchable
electronic format."  ECF No. 284 at 7.  On site procedures were
used "to ensure that consideration was shown to the possibility

_____

[12] A September 25, 2013 Sanctions Order issued by Vice Chancellor
Laster of the Delaware Court of Chancery extended the seizure of
Indemnity to include IDG.  *See* Del. Sup. Crt. Op. at 42-46.
Vice Chancellor Laster extended the seizure order to IDG because
Cohen had used IDG to interfere with Indemnity's operations
after the regulatory takeover.  *See id.* at 17, 21-22; *see also*
Del. Ct. Chancery Op. at 15 ("Cohen shall not, directly or
indirectly, exercise any control over IDG")(*quoting* the
September 25, 2013 Sanctions Order).

of obtaining attorney-client privileged material." *Id*. The
list of items seized shows certain documents marked as "TAINT
DOCUMENTS." Gov. Ex. 2 at 3.[13]

On June 24, 2014, Postal Inspector Kalliopi Tserkis-
Mullins[14] of the United States Postal Inspection Service obtained
a warrant to search Cohen's home at 2419 Long Ridge Road,
Reisterstown, Maryland ("2419 Long Ridge Road") for evidence of
mail and wire fraud and false statements to insurance
regulators. Gov. Ex. 3 at 5.[15] The search warrant authorized

---

[13] On April 15, 2015, attorneys for the Commissioner, in her
capacity as Indemnity Receiver, informed the government that the
Commissioner waived attorney-client privilege for communications
between Indemnity and its legal counsel. Gov. Ex. 12.

[14] Tserkis-Mullins has been employed by the Postal Inspection
Service since 2002; before that, she was a police officer with
the Department of Defense, National Security Agency. Gov. Ex. 3
at 6. Tserkis-Mullins is assigned to the Postal Inspection
Service's Mail Fraud Team, which investigates mail and wire
fraud and money laundering. *Id*. at 6-7. She has "received
extensive training concerning investigations involving
violations of . . . federal law[,] including thefts and
misappropriation of monies, postal money orders, mail fraud, and
prohibited items placed in the United States mails." *Id*. at 7.
In August 2009, Tserkis-Mullins completed a mortgage fraud
training course. *Id*.

[15] The search warrant affidavit incorporated Agent Perry's 950
Ridgebrook Road affidavit and the January 2, 2014 Delaware Court
of Chancery Opinion. *Id*. at 27, 51. Tserkis-Mullins averred
that there was "a suspicious absence" of electronic data or
computers assigned to Cohen at 950 Ridgebrook Road. *Id*. at 8-9.
In September 2013 "Cohen and several of his entities" moved from
1 Cooper Field Court, Phoenix, Maryland ("1 Cooper Court") to
2419 Long Ridge Road. *Id*. at 10. An employee of some of
Cohen's entities told Tserkis-Mullins that Cohen ran businesses
from his home. *Id*. at 11-12. As of November 2013, Indemnity

the seizure of various documents and records and computers,

"related peripheral[]" devices, and electronic data "pertaining

to the" list of items to be seized. *Id.* at 3-4. The affidavit

stated the procedure by which Cohen's electronic data would be

reviewed to minimize the risk that information not subject to

the search warrant would be viewed. *Id.* at 18-19.[16]

On June 25, 2014, federal agents executed the search

warrant. ECF No. 284 at 8.[17] According to the government,

"Cohen inquired why the agents were executing the warrant that

---

received mail at 2419 Long Ridge Road. *Id.* at 12. In June
2014, Cohen received personal and business mail at his home.
*Id.* Cohen had been known to use electronic storage devices and
a laptop that had not been recovered. *Id.* at 12-13. A pen
register and trap-and-trace device showed that Cohen sent emails
from his home IP address about Indemnity and the Delaware civil
litigation and had established various domain names. *Id.* at 13-
15. Cohen sent emails to himself stating, for example, "[c]ash
was embezzled and I did not want to reveal it until it was
recovered--I created the fictional scenario of Susquehanna Bank
to cover it up." *Id.* at 15-16.

[16] The procedure included (1) "surveying various file directories
and the individual files they contain," (2) "opening or reading
the first few pages of such files in order to determine their
precise contents," (3) "scanning storage areas to discover and
possibly recover deleted data," (4) "scanning storage areas for
deliberately hidden files," and (5) "performing key word
searches [of] all electronic storage areas" to find related
subject matter. *Id.* at 19.

[17] At the motions hearing, Cohen attempted to cross-examine Agent
Perry about the 2419 Long Ridge Road affidavit by referring to
case number 14-1493. Hr'g Tr. at 26-27. However, the search
warrant supporting the June 25, 2014 search had been numbered
14-1417. *Id.* at 27; Gov. Ex. 3. Although it is unclear, Cohen
may have confused the search warrant case number with the case
number assigned to his appeal of one of this Court's Orders,
which is 14-4913. *See Docket.*

day." *Id.* As in the search of 950 Ridgebrook Road, "procedures were employed to minimize the risk that the investigative team had access to attorney-client privileged information." *Id.* During the search, agents found notes containing a "target list" that included "DE Folks" and "MD government and judges," a recently-executed will, survivalist gear, firearms, financial and corporate records, and electronic evidence. *Id.*; Gov. Ex. 4; Hr'g Tr. at 16.

That day, Cohen was arrested at his home and given his *Miranda* warnings. ECF No. 284 at 8; Hr'g Tr. at 11-12. Cohen signed a written *Miranda* waiver form and made a lengthy statement to Agents Costello and Perry about "major financial frauds." Gov. Ex's. 5, 6 at 18.[18] During the interview, the scope of the investigation changed when agents executing the search warrant alerted Agents Perry and Costello that wigs, masks, survivalist gear, notebook, firearms, and Cohen's last will and testament had been found in the home. Hr'g Tr. at 14-15. Agents Perry and Costello asked Cohen about those items,

---

[18] Agents Perry and Costello interviewed Cohen in his living room. Hr'g Tr. at 11. Agent Costello read the *Miranda* waiver form to Cohen, and Cohen read the copy provided to him. Hr'g Tr. at 11. Agents Perry and Costello witnessed Cohen's signing of the form. *Id.* at 12. Breaks were taken during the interview. *Id.* at 12-14. Under then-current FBI policy, the interview was not recorded. *Id.* at 60-61.

and whether he had planned to harm Delaware officials or other government personnel. *Id.* at 15-17.

At the end of the interview, Cohen signed a written consent form authorizing the search of his Lexus car. Gov. Ex. 7; Hr'g Tr. at 18.[19] The consent form notified Cohen that he had "the right to refuse" consent and to "require us to secure a search warrant," and "any incriminating evidence . . . may be used against [him] in court." Gov. Ex. 7. Cohen later added his Mercedes car to the consent form; however, nothing was seized from that car. *Id.*; Gov. Ex. 9; ECF No. 284 at 11.[20]

Inside the Lexus agents found, attached to a clipboard, a Google Maps printout of directions from Baltimore to the Delaware Lieutenant Governor's home and from there to Vice Chancellor Laster's home. ECF No. 284 at 11; Hr'g Tr. at 21-22. Inside the clipboard were about 119 pages of computer printouts and handwritten notes. ECF No. 284 at 11. Agents also found a voice recorder, spotting scope, rifle tripod, and ammunition. *Id.*; Gov. Ex. 8.[21]

---

[19] Agent Costello read Cohen the consent form and gave him a copy to review. Hr'g Tr. at 18.

[20] Cohen did not impose oral or written restrictions on the search; however, he did not explicitly consent to the search of his notebooks or voice recorder. Hr'g Tr. at 19-20, 34-35, 38-39.

[21] Some of the ammunition had been used. Hr'g Tr. at 23.

After agents found an empty 9mm Smith & Wesson pistol case at Cohen's home, and Cohen told agents the firearm was at "Checks N' Keno," agents obtained a warrant to search the business premises located at 6408 Reisterstown Road. Gov. Ex. 10. Agents seized the pistol, electronic media, and documents. Gov. Ex. 11.

According to the government, agents continued to subject the seized evidence to measures designed to protect the attorney-client privilege. ECF No. 284 at 12.

B.   Procedural History

On June 24, 2014, a grand jury indicted Cohen on five counts of making false statements to an insurance regulator under 18 U.S.C § 1033(a). ECF No. 1.

On June 27, 2014, Magistrate Judge Beth P. Gesner ordered Cohen detained pending trial. ECF No. 12.[22]

On September 16, 2014, a superseding indictment charged Cohen with five counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of money laundering in violation of 18 U.S.C. § 1957, and five counts of making false statements to an

---

[22] After a hearing, on August 6, 2014 Judge Sullivan ordered Cohen detained pending trial. ECF No. 22. After another hearing pursuant to Cohen's motion for review of the detention order, on October 16, 2014, this Court ordered Cohen detained. ECF Nos. 36, 39. On February 11, 2015, Judge Sullivan denied Cohen's motion to reopen the detention hearing. ECF No. 168. On March 19, 2015, this Court overruled Cohen's Rule 59 objection to Judge Sullivan's Order, finding that he had not shown that reopening the hearing was merited. ECF No. 217.

insurance regulator in violation of 18 U.S.C § 1033(a).  ECF No.
26.  The superseding indictment "expanded the scope of the
charges from a six month time span involving false statements to
one regulatory authority about one bank to a five-year wire
fraud scheme."  ECF No. 117-1 at 3.  It included forfeiture
allegations of $100,000,000.00 in connection with the wire fraud
charges, $866,667.67 in connection with the money laundering
charges, and $100,866,666.67 in substitute assets.  ECF No. 26
at 15-16.

On November 5, 2014, the government obtained warrants to
seize the following property subject to forfeiture: (1) a toy
collection; (2) Fidelity investment accounts; (3) jewelry found
at 2419 Long Ridge Road; (4) personal property found at 950
Ridgebrook Road; (5) four M&T Bank accounts; and (6) nine
Susquehanna Bank accounts. *See* ECF Nos. 86-1 to 86-6 (seizure
warrant applications).  On November 12, 2014, the government
obtained warrants to seize (7) the monetary value of a
Cincinnati Life Insurance policy; and (8) a 2012 Infiniti G37
coupe ("Infiniti G37").  *See* ECF Nos. 86-7, 86-8.  The seizure
warrant applications sought assets constituting proceeds of the
offenses[23] and substitute assets.[24]

---

[23] Tserkis-Mullins averred that $20,000 of the $50,700 Infiniti
G37 purchase price "came from bank accounts into which proceeds
flowed from the crimes charged."  ECF No. 86-8 at 6.  Cohen
allegedly paid that sum from a PNC bank account that had been

On November 17, 2014, after a hearing, Magistrate Judge Timothy J. Sullivan granted Cohen's appointed counsel's motion to withdraw and found that Cohen had made a "knowing, voluntary[,] and intelligent waiver of the right to counsel and will proceed *pro se*." ECF No. 66.

On November 18, 2014, the government moved for a speedy trial order excluding time until trial. ECF No. 67. On November 19, 2014, Judge Sullivan appointed Alan Bussard, Esq., as Cohen's standby counsel. ECF No. 69. On November 21, 2014, Cohen moved to dismiss the indictment. ECF No. 71.[25]

On November 25, 2014 a second superseding indictment charged Cohen with fifteen counts of wire fraud, five counts of aggravated identity theft under 18 U.S.C. § 1028A, two counts of money laundering, five counts of making false statements to an

---

"funded with at least $552,000 of proceeds of fraudulent activity." *Id.* Two of the M&T Bank accounts had been funded with $950,000 of fraudulently-obtained proceeds. ECF No. 86-5 at 8-9. Two other M&T Bank accounts were seized as substitute assets. *Id.* at 9.

[24] The seized substitute assets were items found at Cohen's home, business, and storage facility that appeared to be owned by him, bank accounts registered to Cohen or his businesses, or on which he was a signatory, and the value of the Cincinnati Life Insurance policy in Cohen's name and purchased with funds from one of his M&T Bank accounts. ECF Nos. 86-1 at 9-10; 86-7 at 5-7.

[25] Cohen has filed 13 additional motions to dismiss the indictment. *See* ECF Nos. 85, 89, 96, 111, 134, 137, 152, 164, 169, 175, 180, 195, 201. On April 8, 2015, Cohen moved for a hearing and expedited ruling on ECF No. 175. ECF No. 261.

insurance regulator, and four counts of obstructing justice
under 18 U.S.C. §§ 1512, 1513.  ECF No. 73.

On November 26, 2014, Cohen moved to suppress evidence.
ECF No. 76.[26]

On December 2, 2014, a third superseding indictment charged
Cohen with the same counts and made minor corrections to the
second superseding indictment.  ECF Nos. 78, 80.

On December 23, 2014, Cohen moved to sever the obstructing
justice counts.  ECF No. 100.  On December 31, 2014, Cohen moved
for a jury determination on forfeiture, ECF No. 107, to shorten
time to trial, ECF No. 108, and to disqualify the Office of the
U.S. Attorney, ECF No, 110.  On January 6, 2015, Cohen moved for
judicial action.  ECF No. 115.[27]

On January 7, 2015, the government moved for leave to file
a two-day late response to two of Cohen's motions to dismiss.
ECF No. 117.  On January 9, 2015, the government moved for the
Court to consider ECF No. 117-1 as a supplemental response.  ECF
No. 121.  On January 15, 2015, Judge Sullivan denied Cohen's
request for two paralegals.  ECF No. 124.  On January 20, 2015,
Cohen moved for an order of contempt or sanctions against the

---

[26] Cohen has filed three more motions to suppress evidence.  *See*
ECF Nos. 93, 189, 256.

[27] Cohen has filed two more motions for judicial action.  *See* ECF
Nos. 118, 212.

government.  ECF No. 135.[28]  On January 29, 2015, Cohen moved for
reconsideration of Judge Sullivan's January 26, 2015 Order
denying his motion for temporary and injunctive relief.  ECF No.
153.[29]

On February 27, 2015, the government moved for an extension
of time to file a one-day late response to two motions.  ECF No.
177.

On March 6, 2015, Cohen moved for Rule 404(b) notice.  ECF
No. 182.  On March 9, 2015, Cohen moved for Rule 12(b)(4)
notice, ECF No. 192, for leave to file motions after the April
1, 2015 deadline, ECF No. 190, and *in limine* to preclude hearsay
evidence at trial, ECF No. 193.[30]  On March 16 and March 27,
2015, Cohen moved for judicial notice.  ECF Nos. 213, 238.

On April 16, 2015, Cohen filed a Rule 59 objection to Judge
Sullivan's oral March 30, 2015 Order denying his motion for a
*Farmer* hearing.  ECF No. 286.  On April 17, 2015, Judge Sullivan

---

[28] On January 28, 2015, Cohen filed a second motion for an order
of contempt or sanctions.  ECF No. 149.

[29] Judge Sullivan had construed Cohen's motion as seeking the
return of seized property.  ECF No. 142 at 1.  However, "[t]o
the extent that Mr. Cohen seeks an order from the Court
enjoining the Government from seeking additional seizure
warrants against his assets, [Judge Sullivan found] that there
[was] no legal basis to do so and accordingly RECOMMEND[ED] that
such an injunction be denied."  *Id*. at 1-2.

[30] Cohen has filed four more motions *in limine*.  *See* ECF Nos.
206, 207, 273, 308.

granted Cohen's motion to terminate standby counsel and appointed a paralegal to assist Cohen. ECF No. 290. On April 21, 2015, Judge Sullivan appointed William Purpura, Esq. as Cohen's standby counsel. ECF No. 294. On April 27, 2015, Cohen moved *in limine* to call prosecution witnesses as adverse witnesses, ECF No. 308, and objected to Judge Sullivan's oral April 10, 2015 ruling about his access to standby counsel, paralegal support, and his discovery notes, ECF No. 307.

On May 4, 2015, the Court held an evidentiary hearing. ECF No. 313. Agent Perry and Cohen testified at the hearing. *See id.*[31]

Cohen testified that "the extraordinary delay of this matter" has prejudiced his preparation of his defense and caused personal hardship. Hr'g Tr. at 64. As to personal hardship, several bills went unpaid, and Cohen's credit rating and "personal psyche" have been affected. *Id.* at 64-66. He has not had a "solid night['s]" sleep while detained and has had anxiety and weight loss. *Id.* at 66.[32]

---

[31] Agent Perry's testimony about the searches conducted pursuant to search warrants and Cohen's consent has been incorporated into the above facts; Cohen's testimony about prejudice from trial delay is summarized below.

[32] Cohen "already suffer[ed] from anxiety-related issues." Hr'g Tr. at 66.

Cohen testified that his trial preparation has been hampered because the detention facility lacks a law library,[33] and he has only just received "satisfactory paralegal support, . . . stand-by counsel, and IT [assistance]." *Id*. at 67.  Cohen "accepted" that he had decided to represent himself but his "inability or non-existent ability at 'CDF'[34] to do proper research is impairing [his] ability to provide a defense." *Id*. at 67-68.  Cohen has "lost evidence as a result of the delay, because [he has not] had access to the evidence," but he has not lost witnesses. *Id*. at 68.  Cohen acknowledged that he has been able to visit the courthouse several days each week since January 2015 to review discovery. *Id*. at 69.[35]  Cohen further

---

[33] Cohen has access to a "LexisNexis CD-ROM of federal cases." *Id*. at 67.

[34] Chesapeake Detention Facility.

[35] *See also* ECF No. 95 (Judge Sullivan's Order outlining the discovery procedures in this case).  That Order provided for Cohen to permit standby counsel to collect and review Cohen's discovery notes and return them to Cohen if he determined that the notes did not violate the protective order. *Id*. at 3.

Cohen asserted that it took "seven months of requesting" to obtain a paralegal and computer forensic technician.  Hr'g Tr. at 73.  However, Cohen acknowledged that he had told Judge Sullivan that he was "experienced with computers." *Id*.; *see also* ECF No. 290 at 9 ("[Judge Sullivan] has stated on numerous occasions during status hearings that it would be advisable for Mr. Cohen to seek to retain the services of a computer forensic service provider, to be compensated pursuant to the CJA if necessary, to assist in viewing the electronic discovery that has been produced to him. Mr. Cohen has declined to do so and insists that the Government instead re-produce electronic

testified that he was not concerned about the fraud charges because "[he] know[s his] innocence will be proven." *Id.* at 76. Cohen acknowledged that his conduct was "a factor" giving rise to the instant charges. *Id.* at 80.

At the end of the hearing, the Court extended Cohen's deadline for proposing jury instructions and *voir dire* to May 15, 2015, and stated that the parties will be ordered to propose verdict sheets by the same date. *Id.* at 95.

II.  Analysis

    A.  Motions to Dismiss

        1.  Motions to Dismiss Counts

            a.  Counts 6-7

Counts six and seven charge Cohen with money laundering under 18 U.S.C. § 1957.  ECF No. 26 at 12.[36]  Cohen seeks dismissal of counts six and seven and related forfeiture

---

discovery under specifications directed by Mr. Cohen."); Jan. 22, 2015 recording of a hearing before Judge Sullivan, at 1:26:50 p.m.(Cohen asserting that he "[does not] need a forensic software technician").  With the assistance of the forensic expert and paralegal that Judge Sullivan has appointed, Cohen is "ready to go trial."  Hr'g Tr. at 91.

[36] The superseding indictment alleges that Cohen "did knowingly engage, and attempt to engage, in the monetary transactions listed below, by, through and to a financial institution, affecting interstate commerce, in criminally derived property having a value greater than $10,000, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343." ECF No. 26 at 12.  Cohen filed this motion before grand juries returned the second and third superseding indictments; thus, the numbering of counts has since changed.

provisions of the superseding indictment because those counts
fail to allege the manner in which the wire frauds adversely
affected a financial institution.  ECF No. 71 at 1-2.  The
government argues that the money laundering charges underlying
counts six and seven do not require an adverse effect on a
financial institution.  ECF No. 86 at 4.

The money laundering statute provides that "[w]hoever, in
any of the circumstances set forth in subsection (d), knowingly
engages or attempts to engage in a monetary transaction in
criminally derived property of a value greater than $10,000 and
is derived from *specified unlawful activity*, shall be punished
as provided in subsection (b)."  18 U.S.C. § 1957(a)(emphasis
added).  Under 18 U.S.C. § 1956 (c)(7)(A),[37] "specified unlawful
activity" includes offenses listed in 18 U.S.C. § 1961; wire
fraud under 18 U.S.C. § 1343 is one of the enumerated offenses.
*See* 18 U.S.C. § 1961(1).

Cohen appears to argue that because wire fraud under 18
U.S.C. § 1343 is the "specified unlawful activity" underlying
the money laundering counts the indictment is inadequate because
the government has omitted "relevant information that deflates

---

[37] Section 1957 adopts the meaning of "specified unlawful
activity" stated in 18 U.S.C. § 1956.  *See* 18 U.S.C.
§ 1957(f)(3).

[its] violation theory." ECF No. 103 at 2.[38]  However, Cohen

concedes that "the government include[d] the statutory language

required to properly allege a money laundering violation." *Id.*

An indictment alleging money laundering need not allege the

elements of the underlying specified unlawful activity. *United

States v. Cherry*, 330 F.3d 658, 667 (4th Cir. 2003) (money

laundering properly alleged when neither the money laundering

counts nor the bank embezzlement counts--the specified unlawful

activity at issue--stated all the elements of bank

embezzlement); *United States v. Smith*, 44 F.3d 1265 (4th Cir.

1995)("[D]etails about the nature of the unlawful activity

underlying the [money laundering] need not be alleged.").  Money

laundering is sufficiently alleged when, as here, the government

alleges "that the money laundering transactions involved funds

derived from a specified unlawful activity, and that such

activity violated [18 U.S.C. § 1343]." *Cherry*, 330 F.3d at 668.

Accordingly, Cohen's motion to dismiss counts six and seven and

related forfeiture provisions will be denied.

        b.    Counts 1-22

Counts one to twenty-two of the third superseding

indictment charge Cohen with wire fraud, aggravated identity

---

[38] According to Cohen, that information included the use of
illegally seized evidence, facially deficient warrants, and
privileged materials.  ECF No. 103 at 2.  Cohen has raised those
issues in his suppression motions, which are addressed *infra*.

theft, and money laundering.  ECF No. 78 at 1-15.  Cohen seeks

dismissal of those counts on the grounds that discovery provided

to him lacks direct evidence of his specific intent to harm

policy holders;[39] thus, Cohen argues, the grand jury must have

been improperly instructed and may have improperly relied on

hearsay evidence.  ECF Nos. 195 at 1-3; 262 at 1.  The

government argues that Cohen's intent is a trial issue that may

be proved through circumstantial evidence.  ECF No. 231 at 3-5.[40]

"The grand jury proceeding is accorded a presumption of

regularity, which generally may be dispelled only upon

particularized proof of irregularities in the grand jury

process."  *United States v. Mechanik*, 475 U.S. 66, 75, 106 S.

Ct. 938, 944, 89 L. Ed. 2d 50 (1986)(O'Connor, J., concurring in

the judgment); *United States v. R. Enterprises, Inc.*, 498 U.S.

292, 300, 111 S. Ct. 722, 728, 112 L. Ed. 2d 795 (1991).  On the

use of hearsay evidence before the grand jury, the U.S. Supreme

Court has affirmed a conviction when "all the evidence before

the grand jury was in the nature of 'hearsay.'"  *Costello v.*

*United States*, 350 U.S. 359, 363, 76 S. Ct. 406, 408, 100 L. Ed.

397 (1956).  The *Costello* Court explained:

---

[39] Cohen argues that other counts should be dismissed because
they "stem from" the wire fraud counts.  ECF No. 195 at 2.

[40] The government also asserts that it has previously responded
to Cohen's attacks on the third superseding indictment based on
what he believes was presented to the grand jury.  *Id*. at 2; ECF
No. 220.

> If indictments were to be held open to challenge on
> the ground that there was inadequate or incompetent
> evidence before the grand jury, the resulting delay
> would be great indeed. The result of such a rule would
> be that before trial on the merits a defendant could
> always insist on a kind of preliminary trial to
> determine the competency and adequacy of the evidence
> before the grand jury. This is not required by the
> Fifth Amendment. An indictment returned by a legally
> constituted and unbiased grand jury, like an
> information drawn by the prosecutor, if valid on its
> face, is enough to call for trial of the charge on the
> merits.

*Id.* at 408-09.  The Fourth Circuit has "consistently adhered to

*Costello*'s guiding and settled principles."  *United States v.*

*Jefferson*, 546 F.3d 300, 313 (4th Cir. 2008).

Cohen relies on *United States v. Ruggiero*, 934 F.2d 440 (2d

Cir. 1991), *see* ECF No. 295 at 3, which states that "the use of

hearsay evidence before a grand jury may render an indictment

invalid if . . . there is a high probability that the defendant

would not have been indicted had only nonhearsay evidence been

used." *Ruggiero*, 934 F.2d at 447.  Cohen argues that "there is

such a probability [here] because there is no evidence or

witnesses whom the government interviewed that can reasonably

support [Cohen's intent to harm]."  ECF No. 195 at 3.  *Ruggiero*,

however, is not binding on this Court.  In *United States v.*

*Alexander*, 789 F.2d 1046, 1048-49 (4th Cir. 1986), the Fourth

Circuit--following *Costello*--rejected the defendant's argument

that the indictment should have been dismissed because the

government's "primary grand jury witness . . . presented unsubstantiated and hearsay testimony to the grand jury" and "the evidence before the grand jury was not sufficiently specific as to support the allegations of the indictment." There, the Fourth Circuit held that the defendant "was properly brought to trial for the charges of which he was eventually convicted." *Id.* at 1049. Cohen's speculation is an insufficient basis for relief. *Mechanik*, 475 U.S. at 75.

Additionally, because "[f]raudulent intent may be inferred from the totality of the circumstances and need not be proven by direct evidence,"[41] and Cohen does not attack the superseding indictment's facial validity, trial on the merits of counts one to twenty-two is merited, *see Costello*, 350 U.S. at 409. Accordingly, Cohen's motion to dismiss those counts will be denied.

c.   Counts 16-20

Counts 16 to 20 of the third superseding indictment charge Cohen with aggravated identity theft under 18 U.S.C. § 1028A. ECF No. 78 at 13-14.  Those counts allege that Cohen unlawfully used the personal identifying information of "T.M.," "L.S.", and "N.B." *Id.*

---

[41] *United States v. Ham*, 998 F.2d 1247, 1254 (4th Cir. 1993); *United States v. Lenertz*, 63 F. App'x 704, 711 (4th Cir. 2003)(finding that elements of wire fraud were established by circumstantial evidence).

Cohen seeks dismissal on the basis that the government has not sufficiently identified the "person" whose identity was allegedly stolen.  ECF No. 169 at 1-2.  The government argues that the superseding indictment complies with Fed. R. Crim. P 7(c)'s "notice pleading" requirement, it is Department of Justice policy to refer to identity theft victims by their initials in the indictment to prevent additional victimization, Cohen knows the identity of the persons whose identities he allegedly stole, and "Cohen's complaints go to issues of proof which have to be resolved at trial."  ECF No. 198 at 1-3.

Under Rule 7(c), the indictment must have "a plain, concise, and definite written statement of the essential facts constituting the offense charged."   There is no requirement that the indictment state the full names of the individuals whose identities were allegedly stolen or provide additional identifying information; Cohen's reliance on *United States v. Mitchell*, 518 F.3d 230, 233 (4th Cir. 2008) is misplaced. There, the Fourth Circuit addressed whether someone's name was a sufficiently unique identifier to constitute "a means of identification of another person" such that the defendant's use of that name amounted to aggravated identity theft under 18 U.S.C. § 1028A.  *Mitchell*, 518 F.3d at 233-235.  The Court held that "[a] name alone . . . would likely not be sufficiently unique to identify a specific individual because many persons

23

have the same name." *Id.* at 234. *Mitchell*, however, did not address whether the government had sufficiently alleged aggravated identity theft. Cohen's motion lacks merit, and will be denied.

### d. Counts 23-27

Counts 23 to 27 of the third superseding indictment charge Cohen with making false statements to an insurance regulator under 18 U.S.C. § 1033. ECF No. 78 at 16-17. Cohen allegedly made several misrepresentations about Indemnity's financial status. *Id.*

Section 1033(a) provides that

(1) *Whoever* is engaged in the business of insurance whose activities affect interstate commerce and knowingly, with the intent to deceive, makes any false material statement or report . . .
(A) in connection with any financial reports or documents presented to any insurance regulatory official or agency or an agent or examiner appointed by such official or agency to examine the affairs of *such person*, . . .
shall be punished as provided in paragraph (2).
(2) The punishment for an offense under paragraph (1) is a fine as established under this title or imprisonment for not more than 10 years, or both . . . .

18 U.S.C. § 1033(a)(emphasis added).

Cohen seeks dismissal of those counts on the basis that "person" in the underlying statute, 18 U.S.C. § 1033, means "an

entity" and not "an individual." ECF No. 180 at 1.[42] The
government argues that Cohen is the "whoever" in the first
paragraph and that Congress has defined "whoever" and "person"
to include corporations and individuals. ECF No. 218 at 1-2
(*citing* the Dictionary Act, 1 U.S.C. § 1). The government
further argues that if "only corporations could be convicted
under Section 1033(a), the prescribed penalty would have been
for a fine only and not imprisonment for 10 or 15 years." *Id.*
at 3.[43]

According to Cohen, the government should have charged
Indemnity--not him--with making false statements because
"individuals do not submit financial reports to regulators
regarding themselves; only an entity submits financial reports

---

[42] Cohen relies on 18 U.S.C. § 1033(b)(1)(A), which provides that
"[w]hoever--acting as, or being an officer, director, agent, or
employee of, any person engaged in the business of insurance
whose activities affect interstate commerce . . . willfully
embezzles . . . moneys, funds, premiums, credits, or other
property of such person . . . shall be punished." ECF No. 180
at 3. Cohen appears to argue that because § 1033(b)(1)(A)
defines the positions the "whoever" may hold to be liable, and
§ 1033(a)(1) does not, § 1033(a)(1) was not intended to apply to
individuals. However, that § 1033(b)(1)(A) may apply only to
individuals does not necessarily mean that § 1033(a)(1) may not
apply to entities and individuals.

[43] Cohen contends that the disjunctive nature of the possible
punishments--a fine *or* imprisonment--"deflates the government's
assertion . . . that the statute is only applicable to
individuals." ECF No. 258 at 2. The government, however, never
asserted that § 1033(a) only applies to individuals. *See* ECF
No. 218 at 2("[I]n Section 1033(a), 'whoever' refers to
individuals as well as corporations . . . .").

to regulators on behalf of the entity." ECF No. 180 at 4.
Though unclear, Cohen appears to argue that because he allegedly
made false statements about Indemnity, the "whoever" and the
"person" are not the same; thus, he cannot be held liable.

Section 1033(a)(1) has been applied to individuals who
allegedly made false statements about the companies for which
they worked. *See United States v. Womack*, 514 F. App'x 351, 352
(4th Cir. 2013)(per curiam)(unpublished);[44] *see also* United
*States v. Renzi*, 769 F.3d 731, 752 (9th Cir. 2014); *United
States v. Goff*, 400 F. App'x 507 (11th Cir. 2010)(unpublished);
*United States v. Sanders*, No. 4:11CR13-RH/WCS, 2012 WL 385414,
at *1 (N.D. Fla. Feb. 5, 2012); *United States v. Segal*, No. 02
CR 112, 2004 WL 2931331, at *4 (N.D. Ill. Dec. 13, 2004)(statute
applied to individual defendants but judgment of acquittal was
merited because the government failed to present sufficient
evidence that license renewal applications submitted on behalf
of the company were "financial reports or documents"). And, as
noted above, the statute provides for a penalty--imprisonment--
that cannot be conferred on a corporation. *See* 18 U.S.C.

---

[44] In *Womack*, the defendant pled guilty to making false
statements under 18 U.S.C. § 1033(a)(1); the Fourth Circuit
affirmed the 41 month sentence imposed pursuant to the guilty
plea. 514 F. App'x at 352. The factual basis for the plea
stated that the defendant, a licensed insurance agent operating
under the name "Womack and Associates," "made a material false
statement to an insurance examiner." *See United States v.
Womack*, Case No. 12-cr-00176-CCE-1 (M.D.N.C. May 30, 2012).

§ 1033(a)(2).  Accordingly, Cohen's motion to dismiss counts 23
to 27 will be denied.

e.   Counts 28-31

Counts 28 to 31 of the third superseding indictment charge
Cohen with obstructing justice.  ECF No. 78 at 18-23.  Cohen
seeks dismissal of count 28 on the basis that the indictment
lacks "a description of the factual content" surrounding the
circumstances under which Cohen allegedly stated "you are next
[Attorney#2's name], I am coming after you"; thus, Cohen argues,
the indictment violates his Sixth Amendment right to be informed
about the "nature and cause of the accusation."  ECF No. 134 at
2.  Cohen also contends that the failure to provide factual
context deprives him of his First Amendment rights.  ECF No. 134
at 2.  Cohen relies on *United States v. Carrier*, 672 F.2d 300
(2d Cir. 1982).  *See id.*  The government argues that Cohen's
reliance on *Carrier* is misplaced, ECF No. 157 at 2.  The
government is correct.

In *Carrier*, the Second Circuit reversed the district
court's dismissal of an indictment that had alleged threats
against the president on the ground that it lacked sufficient
"factual context in which the actions of the defendant
occurred."  672 F.2d at 301.  The Court held that "[t]he
indictment [which tracked the language of the underlying
offense] is valid on its face. Rule 7(c)(1)4 of the Federal

27

Rules of Criminal Procedure neither requires nor permits that a different rule--one engrafted by judicial construction--should apply where 'free speech' considerations may constitute a defense to the crime charged." *Id.* at 301, 303.  Accordingly, Cohen's argument lacks merit.

Cohen seeks dismissal of count 29 on the basis that the "abstract unrelated acts" underlying count 29 are legal, "portray no harm or threatening actions," and "cannot support" the offense of obstructing justice under 18 U.S.C. § 1512.  *Id.* at 1.  Count 29 alleges that Cohen:

   a) purchased a $25,000 long range Tactical Rifle;
   b) possessed a 50 pound bag of ammonium nitrate and tannerite;
   c) researched the creation and use of bombs, incendiary devices, and explosions;
   d) updated and executed a Last Will and Testament;
   e) created a "Target List," which included a reference to "DE Folks";
   f) researched information about Attorney #1, Attorney #2, a Vice Chancellor of the Delaware Court of Chancery, and others, including their personal identifying information, relatives, and home addresses;
   g) took a scouting trip to Delaware to the houses of a Vice Chancellor of the Delaware Court of Chancery and a Delaware Elected Official; and
   h) ordered incendiary ammunition and a fuse.

ECF No. 78 at 20 ¶ 3.  Count 29 further alleges that in June 2014 Cohen

   did knowingly attempt to kill another person, attempt to use physical force against another person, and use and attempt to use intimidation, threats, misleading conduct, and corruptly persuade another person, with

the intent to (1) influence, delay, and prevent the
testimony of Attorney #1 and Attorney #2 in an
official proceeding and the production of documents in
an official proceeding, and (2) hinder, delay, and
prevent the communication of information concerning
the commission and possible commission of a federal
offense to a law enforcement officer of the United
States.

*Id.* at 20 ¶ 4.  The above-quoted language reflects the wording
of the obstructing justice statute.  *See* 18 U.S.C. § 1512(a),
(b), (d).  Nothing more is required.  *See United States v.
Darby*, 37 F.3d 1059, 1063 (4th Cir. 1994) (affirming defendant's
conviction under 18 U.S.C. § 875(c) when the indictment
"basically track[ed] the [statutory] language").

Cohen further "demands an evidentiary hearing to establish
that the purported witnesses [he allegedly threatened] are
active witnesses in this matter."  ECF No. 134 at 1.  That is an
issue of proof that is properly addressed at trial.  Cohen's
motion will be denied.

    2.  Motion to Dismiss for a Sixth Amendment Violation

Cohen seeks dismissal on the basis that his Sixth Amendment
right to a speedy trial has been violated.  ECF Nos. 85 at 2-3;
119 at 1-2; 236.  The government argues that "[t]o the extent
that Cohen claims that the delay approved by this Court violates
his constitutional rights, the government submits that he is
wrong."  ECF No. 104 at 1.

"A criminal defendant's right under the [Speedy Trial] Act is separate and distinct from his Sixth Amendment right to a speedy trial." *United States v. Thomas*, 305 Fed. App'x. 960, 963 (4th Cir. 2009). The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.

Courts analyze four factors to determine whether this right has been violated: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. Woolfolk*, 399 F.3d 590, 597 (4th Cir. 2005). "In addition to being a factor, the first inquiry is also a threshold requirement, because '[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay.'" *Woolfolk*, 399 F.3d at 597 (quoting *Doggett v. United States,* 505 U.S. 647, 651-52 (1992) (quotation marks omitted)).

"Depending on the nature of the charges," post-accusation delay may be considered "presumptively prejudicial at least as it approaches one year." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)(internal quotation marks and citation omitted); *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009); *Woolfolk*, 399 F.3d at 598 (eight-month delay from the

issuance of a federal detainer to state authorities to the
filing of an indictment was presumptively prejudicial when the
defendant's case "involve[d] little complexity").[45]

As to the length of the delay, almost one year will have
passed since Cohen was first indicted. *See* ECF No. 1 (initial
indictment filed June 24, 2014). Cohen's trial is scheduled to
begin on June 1, 2015. *See* ECF No. 59. The charges against
Cohen have increased from five counts of making false statements
in the first indictment to 31 counts of wire fraud, aggravated
identity theft, money laundering, making false statements to an
insurance regulator, and obstructing justice in the third
superseding indictment. ECF No. 78. Although close, the first
factor is sufficient to trigger the *Barker* analysis. *Hall*, 551
F.3d at 271 ("[T]the [Supreme] Court has suggested that we
should conduct a full inquiry when such a delay approaches one
year.").

As to the reason for the delay, "a reviewing court must
carefully examine several issues, specifically focusing on the
intent of the prosecution." *Hall*, 551 F.3d at 272. Here, there
is no evidence of prosecutorial misconduct. The government has
asserted as reasons for continuances the voluminous discovery,

---

[45] In *Woolfolk*, the defendant had been indicted for--and pled
guilty to--one count of possession with intent to distribute
five grams or more of crack cocaine. 399 F.3d at 593.

numerous negotiations about Cohen's access to discovery while detained, the possibility of additional charges from an ongoing grand jury investigation, the numerous and lengthy defense motions, and changes in Cohen's representation. ECF Nos. 24, 40, 67. The Fourth Circuit has found that a "two-year delay before trial was not uncommonly long." *United States v. Hopkins*, 310 F.3d 145, 150 (4th Cir. 2002). Accordingly, this factor favors the government.

"The third *Barker* factor is whether the Defendant[ ] made a timely assertion of [his] speedy trial rights." *Hall*, 551 F.3d at 272. Cohen has timely asserted his right to a speedy trial. *See, e.g.*, ECF Nos. 40 ¶ 8 (noting that Cohen opposed the government's second motion to toll the speedy trial clock); 48 (Cohen's motion to strike speedy trial orders).

For actual prejudice, there are "three defense interests for consideration: (1) whether there was an oppressive pretrial incarceration; (2) the anxiety and concern suffered by the accused; and (3) the possibility that the defense was impaired." *Hall*, 551 F.3d at 272. "The most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Cohen appears to assert that his pretrial detention is oppressive simply because he has not been convicted of the

crimes that he is alleged to have committed.  ECF No. 85 at 8-9.
Although this factor weighs in Cohen's favor, it is insufficient
to establish prejudice.  *See Barker*, 407 U.S. at 534 (finding
"minimal prejudice" when defendant spent 10 months in prison
before trial but did not otherwise show that witnesses died or
became unavailable).

Cohen testified that he has suffered prejudice from unpaid
bills, impaired credit rating, lack of sleep, weight loss, and
anxiety.  Hr'g Tr. at 64-66.  As to trial preparation, Cohen
complained about his lack of access to a law library--though he
does have access to a legal research database--and his
dissatisfaction with the provision of support services.  Hr'g
Tr. at 67-69.  Cohen's difficulties appear to stem from his
desire to represent himself while he is detained; thus, they
apply to "anyone openly subject to criminal investigation" whose
detention is merited.  *Hall*, 551 F.3d at 272 (citation omitted).
Moreover, Cohen has been appointed standby counsel and, as of
April 17, 2015 has received assistance from a paralegal and a
computer forensic expert.  ECF Nos. 69, 290, 294.[46]  To the

---

[46] Although Judge Sullivan initially denied Cohen's motion to
have two paralegals assist him three days per week, ECF No. 124,
Cohen's testimony that it took "seven months of requesting" to
obtain a paralegal and computer forensic technician, Hr'g Tr. at
73, is belied by his previous reluctance to accept computer
forensic services, *see* ECF No. 290 at 9 ("[Judge Sullivan] has
stated on numerous occasions during status hearings that it
would be advisable for Mr. Cohen to seek to retain the services

extent that Cohen is complaining about his access to discovery,
those issues have been addressed by Judge Sullivan to whom
discovery in this case has been referred.[47]  Cohen has not
established that prejudice merits dismissal.[48]  Accordingly, his
motion to dismiss for a Sixth Amendment violation will be
denied.

        3.    Motions to Dismiss for Due Process Violations

        a.    Pre-Indictment Delay

Cohen asserts that pre-indictment delay has violated his
due process rights under *United States v. Lovasco*, 431 U.S. 783
(1977) and *United States v. Automated Med. Labs., Inc.*, 770 F.2d
399 (4th Cir. 1985).

---

of a computer forensic service provider, to be compensated
pursuant to the CJA if necessary, to assist in viewing the
electronic discovery that has been produced to him. Mr. Cohen
has declined to do so and insists that the Government instead
re-produce electronic discovery under specifications directed by
Mr. Cohen."); Jan. 22, 2015 recording of a hearing before Judge
Sullivan, at 1:26:50 p.m.(Cohen asserting that he "[does not]
need a forensic software technician").

[47] Cohen's motion had indicated the potential loss of an elderly
witness as a source of prejudice.  ECF No. 85 at 8.  However, at
the hearing, Cohen asserted that "if [the witness] is still
alive [at trial], then [he has] no concern."  Hr'g Tr. at 82.

[48] *See United States v. Davenport*, 935 F.2d 1223, 1238-39 (11th
Cir. 1991)("Although compliance with the Speedy Trial Act does
not bar Sixth Amendment speedy trial claims, 'it will be an
unusual case in which the time limits of the Speedy Trial Act
have been met but the [S]ixth [A]mendment right to a speedy
trial has been violated.")(*quoting United States v. Saintil*, 705
F.2d 415, 418 (11th Cir. 1983)).

To establish a due process violation from pre-indictment delay, a court must first "assess whether the defendant has suffered actual prejudice." *Automated Med. Labs., Inc.*, 770 F.2d at 403.[49]  If the defendant carries his burden on the first prong, "the court must then consider the Government's reasons for the delay, balancing the prejudice to the defendant with the Government's justification for delay." *Id.* at 403-04.  "The basic inquiry then becomes whether the Government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.'"  *Id.* at 404 (*quoting Lovasco*, 431 U.S. at 790).

As to prejudice, Cohen argues that "evidence . . . has been improperly passed between many state and federal law enforcement agencies without any protocol for integrity protection," "[r]egulatory agents and for-profit contractors of each agency have tainted the evidence," and evidence has been lost or destroyed.  ECF No. 89 at 2-3.[50]  Cohen's general assertions are

---

[49] The Court agrees with Cohen that "improper prosecutorial motive" is not required to demonstrate a due process violation. *See* ECF No. 4 (*citing Howell v. Barker*, 904 F.2d 889, 895 (4th Cir. 1990)).  Cohen must, however, establish actual prejudice. *See Howell*, 904 F.2d at 895.

[50] Cohen further asserts that he has suffered prejudice "from his oppressive incarceration."  ECF No. 129 at 3; *see also* ECF No. 89 at 5.  However, *Lovasco* and *Automated Med. Labs., Inc.* address whether prejudice arises from delay between the time the offenses allegedly occurred and the time the defendant was indicted for committing them; neither case addresses prejudice

insufficient to find actual prejudice.  *See Automated Med.*

*Labs., Inc.*, 770 F.2d at 404 (finding slight, if any, prejudice

when defendant argued that 45 month delay resulted in the loss

of a key witness when defendant had not shown that the witness

would have waived his Fifth Amendment right against self-

incrimination and the content of the testimony was "highly

speculative").[51]

Even had Cohen established prejudice, the government

contends that pre-indictment delay "was slight," and "[f]rom the

inception of the federal investigation, the case was under

active and at times intensive investigation."  ECF No. 117-1 at

---

in the context of post-indictment pretrial detention.  As
evidence of oppression, Cohen contends that he will have been
detained more than 12 months.  ECF No. 89 at 5-6.  Cohen relies
on *United States v. Shareef*, 907 F. Supp. 1481 (D. Kan. 1995).
*See* ECF No. 89 at 5.  However, that case dealt with whether due
process considerations merited reopening the defendant's
detention hearing--not whether the indictment should be
dismissed.  *Shareef*, 907 F. Supp. at 1483.  Accordingly, Cohen's
argument is unavailing.

[51]*See also United States v. Dizelos*, 217 F.3d 841 (4th Cir.
2000)("general deficienc[ies] in developing a potential defense"
are insufficient to establish actual prejudice; defendant failed
to carry "the heavy burden of demonstrating actual, substantial
prejudice from pre-indictment delay" when police officers
returned allegedly stolen vehicles to their owners before
defendant could inspect them); *United States v. Jackson*, 131
F.3d 137 (4th Cir. 1997)(Table Opinion)(defendant failed to
carry burden when he asserted that a two-year delay meant that
"he could not develop favorable information from witnesses" but
was unable to identify specific witnesses or evidence lost from
the delay).

5.[52]  "[I]nvestigative delay," distinct from "delay undertaken by

the Government solely to gain tactical advantage over the

accused," does not establish a due process violation.  *Lovasco*,

431 U.S. at 795-96(internal quotation marks and citation

omitted).

Here, the investigation underlying the instant charges

began in November 2013;[53] Cohen was first indicted in June 2014.

The government filed the first and second superseding

indictments adding new charges in September and November 2014.

Though Cohen "submits that the government cannot assert any good

faith reasons for extraordinary pre[-] and post[-]indictment

delay," ECF No. 89 at 5, there is no evidence that the

---

[52] The government's motions to permit a two-day late filing of
its responses to Cohen's motions to dismiss for a due process
violation, ECF No. 117, and to consider ECF No. 117-1 as a
supplement to ECF No. 104, ECF No. 121, will be granted.

[53] Cohen's reply asserts that "the prosecution has committed a
fraud upon the court" by contending that the investigation began
in 2013, because discovery provided to Cohen indicates that an
investigation had been initiated in 2010.  ECF No. 129 (emphasis
omitted).  Cohen makes the same argument in his motion for
contempt or sanctions.  ECF No. 135.  However, the documents on
which Cohen relies are connected to a 2010 investigation that
was closed; the investigation underlying the instant charges
began in 2013.  *See* ECF No. 159 at 1-2; Gov. Ex. 6.

Cohen's second motion for contempt or sanctions complains that
the government stated the wrong date on a certificate of service
attached to responses mailed to Cohen in relation to his pending
appeal before the Fourth Circuit.  ECF No. 149.  The government
has since corrected the error, ECF No. 171 at 1, which, in any
event, fails to merit the relief Cohen seeks.  Accordingly,
Cohen's motions for contempt or sanction will be denied.

government delayed filing the initial or superseding indictments for reasons other than the ongoing investigation. *See Lovasco*, 431 U.S. at 795-96 (reversing district court's dismissal of indictment after 17 month delay); *see also infra* Section II.A.3.b (addressing post-indictment delay).  Accordingly, Cohen's motion to dismiss for pre-indictment delay will be denied.

b.    Post-Indictment Delay

Cohen asserts that the superseding indictments were untimely under 18 U.S.C. § 3161(b); further, they were "malicious and spiteful and vindictively motivated" and brought in violation of his due process rights.  ECF No. 96 at 2-3.  The government argues that Cohen has misread § 3161(b), and there is "no objective evidence of animus."  ECF No. 117-1 at 6.

Section 3161(b) provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).

Although the Fourth Circuit has not ruled definitively on this point, "[s]everal circuits have . . . held that superseding indictments filed longer than thirty days after an arrest which add charges to those contained in the original indictment do not violate the Speedy Trial Act."  *United States v. Hasan*, 747 F.

Supp. 2d 642, 689-90 (E.D. Va. 2010) (*quoting United States v.*
*Hemmings,* 258 F.3d 587, 592 (7th Cir. 2001) (collecting
decisions of the United States Courts of Appeals for the Fifth,
Ninth, and Eleventh Circuits));[54] *see also United States v.*
*Leftenant,* 341 F.3d 338, 343 (4th Cir. 2003) (the Speedy Trial
Act "does not limit the Government's ability to charge a
defendant with offenses unrelated to the charge underlying his
arrest," which "can be brought at any time") (quotation marks
omitted omitted).

Here, Cohen was indicted *before* he was arrested; thus,
§ 3161(b) does not apply.  Section 3161(b) also does not apply
to the additional charges in the superseding indictments.

Additionally, there is no evidence that the timing of the
superseding indictments was vindictively motivated.  "To

---

[54] *Accord. United States v. Walker,* 545 F.3d 1081, 1086 (D.C.
Cir. 2008) ("A superseding indictment filed more than thirty
days after arrest . . . does not violate section 3161(b) so long
as the original indictment was filed within the required thirty-
day time frame."); *United States v. Burgos,* 254 F.3d 8, 15-16
(1st Cir. 2001); *United States v. Velasquez,* 890 F.2d 717, 719-
20 (5th Cir. 1989) ("Our research reveals no case in which the
court has applied the gilding exception to bar prosecution for
an offense not raised in an initial complaint. Indeed,
application of the rule would draw the court into the very case-
by-case inquiry that the bright-line rule attempts to avoid.  We
do not hold that the gilding exception will never be applicable.
We do conclude, however, that the exception should not apply in
this case, where the conspiracy count of the indictment alleges
an offense that is separate and distinct requiring proof of
different elements.") (internal quotation marks and citation
omitted); *United States v. Giwa,* 831 F.2d 538, 542-43 (5th Cir.
1987) (30-day time limit only applies to the charges in the
original criminal complaint).

establish prosecutorial vindictiveness, a defendant must show,
through objective evidence, that (1) the prosecutor acted with
genuine animus toward the defendant and (2) the defendant would
not have been prosecuted but for that animus." *United States v.
Wilson*, 262 F.3d 305, 314 (4th Cir. 2001) (*citing Goodwin*, 457
U.S. 368, 380 n.12 (1982)).  Absent direct evidence of
vindictiveness, a defendant may "succeed on his claim of
vindictive prosecution by demonstrating that the circumstances
of the case support a presumption of vindictiveness and thereby
shift to the government the burden of justifying its conduct."
*Wilson*, 262 F.3d at 317. However, a presumption of
vindictiveness is merited "only when circumstances warrant it
for all cases of the type presented." *Id*. at 315.  Thus, "it
will rarely, if ever, be applied to prosecutors' pretrial
decisions." *Id*.

Cohen contends that the government filed the superseding
indictments in response to his filing of pretrial motions and a
civil suit against the prosecutors; according to Cohen, "the
government feared [his] motions would be successful." ECF Nos.
96 at 3; 202 at 1.[55]  Although "[a] defendant may not be punished

---

[55] Cohen's civil suit was dismissed without prejudice on December
5, 2014.  *See Cohen v. Rosenstein et al.*, Civil No. WDQ-14-3726
(D. Md. Dec. 5, 2014).

for exercising a protected statutory or constitutional right,"[56]
bringing additional charges after a defendant has filed pretrial
motions does not merit a presumption of vindictiveness.  The
U.S. Supreme Court has recognized that:

> a defendant before trial is expected to invoke
> procedural rights that inevitably impose some 'burden'
> on the prosecutor. . . . Thus, the timing of the
> prosecutor's [decision to modify the charges] in this
> case suggests that a presumption of vindictiveness is
> not warranted.  A prosecutor should remain free before
> trial to exercise the broad discretion entrusted to
> him to determine the extent of the societal interest
> in prosecution. An initial decision should not freeze
> future conduct.

*See Goodwin*, 457 U.S. at 381.[57]  Accordingly, the Court will deny
Cohen's motion to dismiss for post-indictment delay.

> 4.   Motion to Dismiss the Third Superseding
>      Indictment under Rule 7(c)(1)

Cohen seeks dismissal on the basis that the third
superseding indictment "simply recite[s] the statutory language

---

[56] *United States v. Fiel*, 35 F.3d 997, 1007 (4th Cir. 1994)
(*citing Goodwin*, 457 U.S. at 372).

[57] *See also Fiel*, 35 F.3d at 1007 ("The presumption generally
arises where the defendant is reindicted after she exercises her
legal right to a trial de novo or following her successful post-
conviction appeal."); *United States v. Woods*, 305 F. App'x 964,
966-67 (4th Cir. 2009) *writ denied*, No. CIV.A. WDQ-12-649, 2012
WL 764422 (D. Md. Mar. 5, 2012) *aff'd in part, dismissed in
part*, 489 F. App'x 668 (4th Cir. 2012)("[I]n the ordinary case,
so long as the prosecutor has probable cause to believe that the
accused committed an offense defined by statute, the decision
whether or not to prosecute, and what charge to file ...
generally rests entirely in his discretion.")(*quoting United
States v. Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 134
L.Ed.2d 687 (1996)).

without inclusion of the elements of the charged offenses." ECF No. 111 at 2. Cohen argues that the wire fraud charges lack a statement of essential facts demonstrating "harm caused by the alleged violations"; thus, those counts must be dismissed, and, concomitantly, "the entire indictment must be dismissed" because the other counts "emanat[e] from the core violative acts" of wire fraud. *Id.* at 3. The government argues that the third superseding indictment is a "speaking indictment" that states the "scheme to defraud in 42 paragraphs" and Cohen's statement to agents shows that he had "a good grasp of the charges against him." ECF No. 131 at 2-3.

Under Rule 7(c),[58] the indictment must have "a plain, concise, and definite written statement of the essential facts constituting the offense charged." "To pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense." *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998). "[T]he sufficiency of an indictment should be determined by practical, as distinguished from purely technical, considerations." *United States v. Cobb*, 905 F.2d 784, 790 (4th Cir. 1990).

---

[58] Fed. R. Crim. P. 7(c).

"The essential elements of a wire fraud offense are '(1) the existence of a scheme to defraud and (2) the use of . . . a wire communication in furtherance of the scheme.'" *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012) (*quoting United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006)). To establish a scheme to defraud, "the government must prove that the defendant[ ] acted with the specific intent to defraud." *United States v. Wynn*, 684 F.3d 473, 478 (4th Cir. 2012) (*quoting United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001)).

As to the scheme to defraud, the third superseding indictment alleges that Cohen "knowingly and willfully . . . by means of materially false and fraudulent pretenses, representations, and promises" about the financial status of Indemnity and other Cohen-controlled entities to policyholders, prospective policyholders, a ratings agency, accounting firms, and regulators, intended to defraud policyholders and prospective policyholders to obtain over $100 million in insurance premiums "to operate his business and enrich himself." ECF No. 78 ¶¶ 1-4, 21, 22-23. It alleges at length the "false and fictitious documents" Cohen created, and the manner in which Cohen defrauded policyholders and potential policyholders to obtain money based on fraudulently obtained financial ratings, audits, and regulatory approvals, and caused Indemnity "to write

insurance policies exceeding the companies' financial ability to pay in the event of a liability determination." *Id.* ¶¶ 24-31; *see also id.* ¶¶ 39-42. It further alleges that Cohen created an entity, Monahan and O'Brien LLC ("M&O"), to obtain $9 million in premium financing loans from First Insurance Funding ("First Insurance") based on false premium financing applications.[59]

Cohen relies on *United States v. St. Gelais*, 952 F.2d 90, 95 (5th Cir. 1992), which states that "[n]ot only must a defendant intend to defraud or deceive, but he must intend for some harm to result from the deceit," to support his argument that the third superseding indictment lacks "any harm or specific elements of victimization," ECF No. 111 at 3. *St. Gelais*, however, held that the district court appropriately instructed the jury that "[t]o act with intent to defraud means to act knowingly and with the specific intent to deceive, ordinarily for the purpose of *causing some financial loss to another or bringing about some financial gain to one's self*." 952 F.2d at 96. Similarly, here, the government has alleged that Cohen defrauded policyholders into purchasing premiums that

---

[59] Premium finance companies provide loans to finance the cost of insurance premiums. ECF No. 78 ¶ 14. Thus, First Insurance paid insurance premiums to Indemnity that the customer obtaining the insurance would ostensibly repay to First Insurance, with interest. *Id.* Here, however, the government alleges that Cohen obtained financing loans from First Insurance on behalf of entities--some of which did not exist--which had not sought insurance, and falsely represented that M&O would repay the premiums to First Insurance. *Id.* ¶¶ 31-38.

exceeded Indemnity's ability to pay for the purpose of enriching himself.

For reasons that are unclear, Cohen also relies on *United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008), which states that "[s]ection 1343 targets not the defendant's creation of a scheme to defraud, but the defendant's execution of a scheme to defraud." ECF No. 111 at 3. There, however, the Court was referring to the manner in which § 1343 "punishes *each* interstate wire transmission that carries out that [fraudulent] scheme." *Williams*, 527 F.3d at 1241. Here, the third superseding indictment alleges 15 instances when Cohen sent emails, made online purchases, and cleared a check in furtherance of the scheme. *Id.* ¶ 43.

The 25-page third superseding indictment--12 pages of which relate to the wire fraud charges--enables Cohen to understand the charges and--if necessary--subsequently plead double jeopardy. Cohen's motion will be denied.[60]

----

[60] Cohen's alternative request for a bill of particulars will also be denied. A bill of particulars is appropriate when an indictment fails (1) to provide adequate information to allow a defendant to understand the charges and (2) to avoid unfair surprise. *See United States v. American Waste Fibers Co.*, 809 F.2d 1044, 1047 (4th Cir. 1987). The third superseding indictment sufficiently alleges the charges.

Cohen's motion to dismiss under Fed. R. Crim. P. 48, ECF No. 164, also lacks merit. Rule 48(b) permits the Court to dismiss an indictment for unnecessary delay in bringing a defendant to trial. Under Rule 48(b) and the Court's supervisory power, "a

5.    Motions to Dismiss for Prosecutorial Misconduct

Cohen seeks dismissal on grounds of (1) the government's
failure to properly identify corporate victims under Fed. R.
Crim. P. 12.4 or otherwise identify victims of the alleged
fraud, ECF No. 175 at 1, and (2) the lack of a "factual or legal
basis for a Grand Jury finding of probable cause that Cohen had
the intent to harm or that Cohen did harm policyholders," ECF
No. 201 at 3.  The government argues that Rule 12.4 is
inapplicable, it is not required to identify victims "or prove
that any victim suffered a loss," and it has elsewhere addressed
Cohen's attacks on the issuance of the indictment.  ECF Nos. 214
at 1-4; 243 at 1.

Under Rule 12.4(a)(2), "[i]f an organization is a victim of
the alleged criminal activity, the government must file a
statement identifying the victim. If the organizational victim
is a corporation, the statement must also disclose the

---

district court has broad discretion to manage its docket and to
impose a wide range of sanctions against parties who violate the
court's scheduling orders." *United States v. Goodson*, 204 F.3d
508, 514 (4th Cir. 2000).  The Fourth Circuit has observed,
however, that "[t]he sanction of dismissal with prejudice,
however, is a harsh remedy for enforcement of those powers, and,
indeed, its use becomes a significant event." *Id.*   Cohen's
motions raise the same grounds for dismissal that the Court has
determined are unavailing. *See* ECF Nos. 164 at 1 (restating
violations asserted in ECF Nos. 48, 85, 89, 96, 111, and 134);
72 (denying ECF No. 48); *see also supra* (denying ECF Nos. 85,
89, 96, 111, and 134).  Further, the government has not violated
a scheduling order.  Accordingly, Cohen's motion will be denied.
Relatedly, the government's motion to file its response to this
motion one day late, ECF No. 177, will be granted.

information required by Rule 12.4(a)(1) to the extent it can be obtained through due diligence." Rule 12.4(a)(1) requires "[a]ny nongovernmental corporate party to a proceeding in a district court [to] file a statement that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation."

Rule 12.4 is intended "to assist judges in determining whether they must recuse themselves because of a 'financial interest in the subject matter in controversy.'" Fed. R. Crim. P. 12.4 advisory committee's note.

The government has asserted that it is willing to provide a victim list to the Court "[i]f either this Court, or the U.S. Magistrate Judges, had an interest in nightclubs, concert tours, and special events, and believed that they might have a ground for recusal." ECF No. 214 at 2. However, when organizations have been victimized, Rule 12.4 *requires* the government to file a statement identifying those victims. *See* Fed. R. Crim. P. 12.4(a)(2)("the government *must* file a statement identifying the victim[s]")(emphasis added); *United States v. Henderson*, 440 F.3d 453, 456 (8th Cir. 2006)("the statement must be filed 'upon the defendant's initial appearance.'")(*quoting* Fed. R. Crim. P. 12.4(b)); *United States v. Turner*, 367 F. Supp. 2d 319, 328 (E.D.N.Y. 2005)(citing Fed. R. Crim. P. 12.4 as "requiring disclosures with respect to organizational victims").

Accordingly, if organizations are the "policyholders and prospective policyholders" the government alleges are the victims in this case, the government must comply with Rule 12.4, and will be so ordered.  Failure to comply with Rule 12.4, however, does not merit dismissal of the indictment.  *See Henderson*, 440 F.3d at 456 (affirming conviction when defendant had failed to show that omission affected his "substantial rights").[61]

As to Cohen's second argument, Cohen's assertion that "[t]he instructions to the Grand [Jury] here must have advised the Grand Jury that it did not have to find an intent to harm element or actual harm element within the [wire fraud] statute," ECF No. 201 at 3, is speculative.  As noted above, "[t]he grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process."  *United States v. Mechanik*, 475 U.S. 66, 75, 106 S. Ct. 938, 944, 89 L. Ed. 2d 50 (1986)(O'Connor, J., concurring the judgment).  The Court has

---

[61] To the extent Cohen argues that the third superseding indictment should be dismissed for failure to identify the victims therein, the Fourth Circuit has held, in the context of the analogous mail fraud statute, that indictments need not name victims.  *United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997).  Further, the government contends that it has provided Cohen with customer lists naming the victims through discovery. "Discovery provided prior to trial may also supplement an indictment to the extent it enables a defendant to prepare a defense."  *United States v. Lewis*, 387 F. Supp. 2d 573, 577 (E.D. Va. 2005).

determined that the third superseding indictment sufficiently
alleges wire fraud; moreover, the government need not prove that
victims suffered a loss. *See United States v. Bunn*, 26 F. App'x
139, 142 (4th Cir. 2001)("Financial loss is not an essential
element of wire fraud. The gravamen of the offense is not . . .
financial loss to the victim; it is, rather, the intent to
obtain money or property from the victim of the
deceit.")(internal citation and quotation marks omitted); *United
States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010)("The
success of the schemes is not relevant to wire fraud").
Accordingly, Cohen's motions to dismiss for prosecutorial
misconduct will be denied.[62]

    B.   Motions to Suppress

    Cohen has moved to suppress evidence from searches of 2419
Long Ridge Road, 950 Ridgebrook Road, and his Lexus.   ECF Nos.
76, 93, 189, 256.

            1.   Motion to Suppress Evidence from 2419 Long Ridge
                 Road and 950 Ridgebrook Road

    Cohen generally asserts that "the bulk of the" items seized
from his home and office must be suppressed under attorney-
client privilege, the work-product doctrine, the Sixth
Amendment, and Fed. R. Crim. P. 16 construed together with Fed.

---

[62] Cohen's related motion for an expedited ruling and emergency
hearing on ECF No. 175, ECF No. 261, will be denied as moot.
Cohen's motion to dismiss under the speedy trial act, ECF No.
152, is addressed *infra* note 115.

R. Civ. P. 26.  ECF No. 93 at 1.  The government argues that Cohen lacks standing to challenge the search and seizure of evidence from 950 Ridgebrook Road and his "broad allegations" about alleged privilege violations lack merit.  ECF No. 284 at 12, 24.

      a.   Standing[63]

The government contends that Cohen lacked a reasonable expectation of privacy in 950 Ridgebrook Road because it was used for closely-regulated commercial purposes, the companies operating out of that location were in receivership, Cohen had resigned from Indemnity, and he had not used the premises for months before the search.  ECF No. 284 at 14.[64]

Standing to challenge a search and seizure under the Fourth Amendment depends on the defendant's "reasonable expectation of privacy" in the place searched,[65] "not merely in the items

---

[63] In this motion, Cohen has not argued for suppression under the Fourth Amendment, which is when standing challenges addressing reasonable expectations of privacy typically arise.  Because Cohen has raised Fourth Amendment challenges to the 950 Ridgebrook Road search in other motions, the Court will address the government's standing argument and apply it to those motions.

[64] Cohen has not responded to the government's standing argument. On April 22, 2015, his reply was due; as of today's date, Cohen has not replied.  *See* Docket.

[65] *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L.Ed.2d 387 (1978).

found."[66]   "[T]he capacity to claim the protection of the Fourth
Amendment depends not upon a property right in the invaded place
but upon whether the person who claims the protection of the
Amendment has a legitimate expectation of privacy in the invaded
place."   *Rakas*, 439 U.S. at 143.   "The burden of showing a
reasonable expectation of privacy in the area searched rests
with the defendant."   *United States v. Gray*, 491 F.3d 138, 144
(4th Cir. 2007)(*citing Rawlings*, 448 U.S. at 104).   Although
"expectations of privacy are at their apex in one's home, they
diminish considerably in nonresidential property."   *Gray*, 491
F.3d at 145-46 ("[T]the expectation of privacy in commercial
premises . . . is different from, and indeed less than, a
similar expectation in an individual's home.")(internal
quotation marks and citation omitted).

The U.S. Supreme Court has found an expectation of privacy
when the defendant "spent a considerable amount of time" in an
office that he shared with others.   *Mancusi v. DeForte*, 392 U.S.
364, 368-69, 88 S. Ct. 2120, 2124, 20 L. Ed. 2d 1154 (1968).   In
contrast, here, the undisputed evidence shows that Cohen had
been barred from 950 Ridgebrook Road eight months before federal
agents searched the premises.   *See* ECF Nos. 76 at 5; 284 at 6-7.

---

[66] *United States v. Horowitz*, 806 F.2d 1222, 1224-25 (4th Cir.
1986)(*citing Rawlings v. Kentucky*, 448 U.S. 98, 104-106, 100 S.
Ct. 2556, 2561-62, 65 L.Ed.2d 633 (1980)).

"Although an individual need not maintain absolute personal control (exclusive use) over an area to support his expectation of privacy, [even] 'occasional presence, without any right to exclude others, is not enough'" to establish standing. *United States v. Horowitz*, 806 F.2d 1222, 1226 (4th Cir. 1986)(*quoting United States v. Torch*, 609 F.2d 1088, 1091 (4th Cir. 1979)). In *Horowitz*, the Fourth Circuit declined to find standing when the defendant was "rarely if ever physically present" at the business location searched, had no office space there, and was in a different location when agents executed the search. Similarly, in *Torch*, the Fourth Circuit found no reasonable expectation of privacy when the defendant's employer's warehouse had been searched and the defendant lacked any financial interest in the warehouse, although he occasionally used the warehouse, 609 F.2d at 1091. As occasional users of business premises lack standing, Cohen--who had been "banished" from 950 Ridgebrook Road more than eight months before the search, had resigned and been removed from all positions with the Board of the company that used 950 Ridgebrook Road and which had been taken over by regulatory authorities--lacks standing to challenge the search and seizure at 950 Ridgebrook Road.[67]  Even

---

[67] *Cf. United States v. Knepper*, 256 F. App'x 982, 984 (9th Cir. 2007)(unpublished) (defendant lacked standing when he had abandoned the place searched); *United States v. Inmon*, No. 07-3103-01-03-CR-SGA, 2008 WL 2018286, at *9 (W.D. Mo. May 7, 2008)

had Cohen established standing, as discussed below, his motion
to suppress evidence from 950 Ridgebrook Road and 2419 Long
Ridge Road on the basis of privilege fails on the merits.

b.   Cohen's Motion

Cohen argues that (1) as a *pro se* litigator he is entitled
to attorney-client and work-product protections, (2) he "has
employed many lawyers over the last 15 years" who "have provided
personal and legal advice" and "tangible items" on matters
relevant to this case,[68] and (3) the government "has reviewed all
of the correspondence between Cohen and lawyers" at firms with
whom he had "personal and corporate relationships."  ECF No. 93
at 1-3.

The government argues that (1) Cohen has failed to identify
documents subject to his claimed privileges, show that "such
evidence is subject to a valid privilege/protection," show that
he--as opposed to his former companies--held any privileges, and
timely assert his privileges; (2) the government has used
"reasonable efforts" to prevent intrusions upon privileged

---

*aff'd sub nom. United States v. Bohmont*, 413 F. App'x 946 (8th
Cir. 2011)(a defendant who has been "justifiably ejected from [a
hotel] room" lacks standing to challenge a search of that room).

[68] Cohen contends "that the employed lawyers were interviewed and
forced to divulge privileged information."  ECF No. 93 at 3.
The government avers that it has not initiated interviews with
the attorneys.  ECF No. 284 at 43.  When Cohen's former attorney
contacted the government, the government "terminated the
conversation soon after its inception" citing concerns for
attorney-client privilege.  *Id.* at 44.

material, and does not intend to use privileged or protected

materials at trial; (3) the "crime-fraud" exception bars the

invocation of attorney-client privilege; and (4) Cohen's pre-

indictment writings are not protected.  ECF No. 284 at 24-25.

### i.    Attorney-Client Privilege

The purpose of attorney-client privilege "is to encourage

full and frank communication between attorneys and their clients

and thereby promote broader public interests in the observance

of law and administration of justice."  *Upjohn Co. v. United

States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584

(1981).  When applicable, "it affords confidential

communications between lawyer and client complete protection

from disclosure."  *In re Grand Jury Subpoena*, 341 F.3d 331, 335

(4th Cir. 2003)(*quoting Hawkins v. Stables*, 148 F.3d 379, 383

(4th Cir. 1998)).  However, because the privilege "impedes the

full and free discovery of the truth, it must be narrowly

construed and recognized only to the very limited extent that

excluding relevant evidence has a public good transcending the

normally predominant principle of utilizing all rational means

for ascertaining truth."  *Id.* (internal quotation marks and

citation omitted); *see also In re Grand Jury Subpoena: Under

Seal*, 415 F.3d 333, 338-39 (4th Cir. 2005); *United States v.

Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996)("[T]the privilege is

not favored by federal courts and is to be strictly confined

within the narrowest possible limits consistent with the logic

of its principle.")(internal quotation marks and citation

omitted).

The Fourth Circuit has adopted a four-part test to

determine whether the attorney-client privilege applies.  It

applies when:

> (1) the asserted holder of the privilege is or sought
> to become a client; (2) the person to whom the
> communication was made (a) is a member of the bar of a
> court, or his subordinate and (b) in connection with
> this communication is acting as a lawyer; (3) the
> communication relates to a fact of which the attorney
> was informed (a) by his client (b) without the
> presence of strangers (c) for the purpose of securing
> primarily either (i) an opinion on law or (ii) legal
> services or (iii) assistance in some legal proceeding,
> and not (d) for the purpose of committing a crime or
> tort; and (4) the privilege has been (a) claimed and
> (b) not waived by the client.

*In re Grand Jury Subpoena*, 341 F.3d at 335 (*quoting United

States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per

curiam)).  "[T]he privilege applies only to '[c]onfidential

disclosures by a client to an attorney made in order to obtain

legal assistance.'"  *In re Grand Jury Subpoena: Under Seal*, 415

F.3d at 338-39(*quoting Fisher v. United States*, 425 U.S. 391,

403, 96 S. Ct. 1569, 48 L.Ed.2d 39 (1976))(first alteration

added).  "An individual's subjective belief that he is

represented is not alone sufficient to create an attorney-client

relationship."[69]  Cohen bears the burden of demonstrating that the privilege applies and has not been waived.  *See In re Grand Jury Subpoena*, 341 F.3d at 335; *United States v. Cohn*, 303 F. Supp. 2d 672, 679 (D. Md. 2003) ("The party asserting an attorney-client privilege must prove its applicability as well as its non-waiver.").

First, Cohen has not demonstrated that he personally held any privilege in relation to the seized materials.  Cohen generally asserts that he employed "many lawyers . . . as direct employees of his various companies" and "indirectly through law firm relationships," who "provided personal and corporate legal advice" about "preparations and submissions to [the ratings agency] A.M. Best & Co, premium financing arrangements with First Insurance Funding, formation of business entities including Monahan and O'Brien, banking relationships with RBC Centura, Susquehanna Bank[,] and many other dealings involving Cohen in his official and personal capacity."  ECF No. 93 at 2. Cohen also names several individuals who were "employed directly

---

[69] *In re Grand Jury Subpoena: Under Seal*, 415 F.3d at 339(*citing United States v. Keplinger*, 776 F.2d 678, 701 (7th Cir. 1985)("We think no individual attorney-client relationship can be inferred without some finding that the potential client's subjective belief is minimally reasonable"), *and In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) ("[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one.")).

by [Indemnity]." *Id.*[70]   Thus, Cohen appears to assert the

privilege in connection with attorneys who represented his

companies.   However, Cohen may only claim the privilege if the

attorneys represented him individually.

"The default assumption is that the attorney only

represents the corporate entity, not the individuals within the

corporate sphere, and it is the individuals' burden to dispel

that presumption." *In re Grand Jury Subpoena*, 274 F.3d 563, 571

(1st Cir. 2001).[71]   Cohen's general assertion that his companies'

---

[70] Based in part upon this assertion by Cohen, the government
argues that the crime-fraud exception also bars reliance on the
privilege. *See* ECF No. 284 at 40-41; *In re Grand Jury
Proceedings*, 102 F.3d 748, 751 (4th Cir. 1996) ("[F]or the
crime-fraud exception to apply, the attorney need not himself be
aware of the illegality involved; it is enough that the
communication furthered, or was intended by the client to
further, that illegality.")(*quoting In re Grand Jury
Proceedings*, 87 F.3d 377 (9th Cir. 1996), *cert. denied sub nom.
Corporation v. U.S.*, 519 U.S. 945, 117 S.Ct. 333, 136 L.Ed.2d
246 (1996)).   Without Cohen's preliminary showing, however, the
Court need not make that determination--and lacks sufficient
information to do so.

[71] In determining whether the presumption has been dispelled,
some courts rely on the test announced by the Third Circuit in
*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120
(3d Cir. 1986).   *In re Bevill* enumerates factors:

> First, they must show they approached [counsel] for
> the purpose of seeking legal advice. Second, they must
> demonstrate that when they approached [counsel] they
> made it clear that they were seeking legal advice in
> their individual rather than in their representative
> capacities. Third, they must demonstrate that the
> [counsel] saw fit to communicate with them in their
> individual capacities, knowing that a possible
> conflict could arise. Fourth, they must prove that

attorneys represented him personally is insufficient to show that he was a client entitled to invoke the attorney-client privilege. Moreover, Cohen cannot now assert the privilege on behalf of companies he no longer controls. "[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349, 105 S. Ct. 1986, 1991, 85 L. Ed. 2d 372 (1985). Here, the Commissioner--as Indemnity Receiver--has waived the attorney-client privilege for communications between Indemnity and its legal counsel. Gov. Ex. 12.

---

> their conversations with [counsel] were confidential. And fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

*Id.* at 123; *accord In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001); *Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1041 (10th Cir. 1998); *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 215 (2d Cir. 1997); *In re Sealed Case*, 29 F.3d 715, 719 n. 5 (D.C. Cir. 1994). The Fourth Circuit, however, has not adopted the *Bevill* test. *See In re Grand Jury Subpoena: Under Seal*, 415 F.3d at 340 ("It is unnecessary to decide whether we find *Bevill* fully consistent with our views on this matter because based on the circumstances we have identified, it would not have been objectively reasonable for appellants to believe that the investigating attorneys represented them personally.").

Second, Cohen's invocation of the privilege fails because
he has not identified the communications he seeks to protect.[72]
"[T]he privilege must be made and sustained on a document-by-
document basis.  A blanket claim of privilege that does not
specify what information is protected will not suffice."  *See*
*United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992);
*United States v. Neill*, 952 F. Supp. 834, 842 (D.D.C. 1997)
("[A]bsent the timely assertion of attorney-client privilege for
*each specific communication or document*, no privilege will be
recognized.")(emphasis added).  Accordingly, Cohen has not shown
that he is entitled to attorney-client privilege and has not
waived it.  *Cohn*, 303 F. Supp. 2d at 679. [73]

---

[72] At the hearing, Cohen acknowledged that the government has
used a "taint team" to review discovery for potentially
privileged materials.  Hr'g Tr. at 61; *see also* ECF Nos. 161,
233 (sealed), 288 (sealed), 303 (sealed).  Cohen stated that he
had no need to present evidence on the issue of attorney-client
privilege "[i]f the [g]overnment is not going to produce any
additional discovery that may be tainted and the only privileged
information that [it is] going to use at trial is [what has]
been submitted by [the Assistant U.S. Attorney responsible for
taint review]."  *Id*.  The government responded that it "is not
seeking to use any attorney-client privileged material at
trial."  *Id*.

[73] Cohen filed his motion more than six months after the
government executed the search warrants and seized the documents
he seeks to protect; thus--although the Court need not resolve
this issue--his lack of timely invocation may amount to waiver.
*See, e.g.*, *In re Grand Jury (Impounded)*, 138 F.3d 978, 982 (3d
Cir. 1998)("[I]f the district court countenanced [the
defendant's] delay in judicially asserting his privilege and
then upheld his claim of privilege, the grand jury's use of the
seized file potentially could have tainted its investigation. .

Further, because Cohen has not established any intrusion upon attorney-client privilege, his claim that the government violated the Sixth Amendment also fails. *See United States v. Brugman*, 655 F.2d 540, 546 (4th Cir. 1981) (how to determine whether "an invasion" into the attorney-client relationship violates the Sixth Amendment).[74]

---

. . [T]he party asserting the privilege must move expeditiously for relief particularly [when], as here, the party asserting the privilege does not even claim that he had reason to believe that the adversarial party was not making use of the work product.").

Further, even had Cohen shown that privileged material has been disclosed, he is not entitled to the suppression of evidence that derives from the protected communications. *See United States v. Squillacote*, 221 F.3d 542, 560 (4th Cir. 2000)(the "tainted fruits" analysis only applies when a constitutional right has been infringed; attorney-client privilege "is a testimonial or evidentiary one, and [is] not constitutionally-based").

[74] To determine whether an invasion has violated the Sixth Amendment, courts consider whether: (1) the government intentionally obtained privileged information, (2) the government has used privileged information, (3) other information derivative of the intrusion has been used to the defendant's detriment, and (4) trial preparation details were learned by the government. *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir. 1981). Even had Cohen shown that the government intruded upon attorney-client privilege, he has not shown that any intrusion meets the above-mentioned factors meriting a finding of a constitutional violation.

ii.   Work-Product Doctrine[75]

Under Fed. R. Civ. P. 26(b)(3), "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  "Rule 26 accords special protection to work product revealing the attorney's mental processes."  *Upjohn Co.*, 449 U.S. at 399-400.

Cohen generally asserts that he has represented himself in other matters and appears to invoke the doctrine for an array of unspecified documents authored by himself.  *See* ECF No. 93 at 1-2.  Cohen further invokes the doctrine for "defense strategy" documents he prepared before his "inevitable pending arrest." *Id.* at 2.  The government argues that "Cohen cannot take evidence admissible under Rule 801(d)(2),[76] re-label it 'attorney work product,' and thereby prevent its admission at trial."  ECF No. 284 at 43.

Invocation of the work-product doctrine typically occurs when a party seeks to withhold evidence during discovery; the party seeking protection must, *inter alia*, "describe the nature

---

[75] The work-product doctrine recognized in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), and supplanted by Fed. R. Civ. P. 26(b)(3), applies to criminal litigation. *See United States v. Nobles*, 422 U.S. 225, 236, 95 S. Ct. 2160, 2169, 45 L. Ed. 2d 141 (1975).

[76] Under Fed. R. Evid. 801(d)(2), an opposing party's statement is admissible as non-hearsay at trial.

of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). Although Cohen seeks to protect materials seized by the government, the same specificity requirement applies.

Cohen has failed to specify the documents he seeks to protect; for that reason, his invocation of the doctrine must fail. *See In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988)(movant "must provide specific and detailed indications of where such work product is located in the documents in order to enable the district court to conduct an expeditious review and redact pure legal theories, impressions, or opinions in those documents or portions thereof"). Accordingly, Cohen's motion to suppress evidence on the basis of privilege will be denied.

> 2. Motion to Suppress Evidence from 2419 Long Ridge Road

Cohen asserts that the affidavit supporting the search warrant application for 2419 Long Ridge Road lacked probable cause, the affiant--Tserkis-Mullins--lacked the necessary experience to prepare the affidavit, and Tserkis-Mullins failed to include exculpatory evidence in the affidavit. ECF No. 76 at 2.

a.    Probable Cause

Cohen argues that the affidavit "is devoid of any reasonable articulable suspicion that a crime has been committed at" 2419 Long Ridge Road and "failed to connect any alleged illegal activity to" the home. *Id.* at 9.   The government contends that the affidavit establishes probable cause.   ECF No. 284 at 21-23.

The Fourth Amendment prohibits unreasonable searches and seizures, and no warrant may issue without probable cause.   U.S. Const. amend. IV.   Probable cause for a search exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place."   *Gates*, 462 U.S. at 238. Probable cause does "not require officials to possess an airtight case before taking action," and officers "must be given leeway to draw reasonable conclusions" from information.   *Taylor v. Farmer*, 13 F.3d 117, 121-22 (4th Cir. 1993).

In reviewing the probable cause determination, "[the Court] accord[s] great deference to the issuing judge's assessment of the facts presented."   *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011).   "[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the [judge's] decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).   In addition

to the probable cause requirement, a valid warrant must be issued by a "neutral and detached magistrate" and must state with particularity the place to be searched and the items or person to be seized. *See* U.S. Const. amend IV; *United States v. U.S. Dist. of Mich.*, 407 U.S. 297, 316 (1972).

Under the "good faith" exception, when officers rely on a facially valid warrant and the supporting affidavit is later found to lack probable cause, the evidence seized is not subject to the exclusionary rule and is admissible in the government's case in chief. *United States v. Leon*, 468 U.S. 897, 913 (1984). The evidence will be suppressed only if (1) the issuing judge was misled by information that the affiant knew or should have known was false, (2) the judge "wholly abandoned" his or her neutral role, (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is so facially deficient that no reasonable officer could presume it to be valid. *Id.* at 923.

Here, the warrant application sought permission to search for evidence of mail and wire fraud and false statements to insurance regulators. Gov. Ex. 3 at 5. The supporting affidavit explained that the search of 950 Ridgebrook Road had uncovered evidence incriminating Cohen in the alleged offenses, but noted the lack of electronic data and computers belonging to

Cohen at the premises, despite the presence of "peripheral computer related items indicative of such computers being in the office previously." *Id.* at 9. The affidavit stated that Cohen had electronic storage devices and a laptop that had not been recovered, and cited evidence demonstrating that Cohen had been operating his businesses from his home, received business-related mail there, and communicated with Indemnity employees (and himself) about the ongoing investigation using an email account connected to his home IP address. *Id.* at 10-13. The affidavit also attached Agent Perry's affidavit supporting the search of 950 Ridgebrook Road--which Cohen has not argued lacked probable cause--and the January 2, 2014 Delaware Chancery Court Opinion that described at length the Delaware civil proceedings related to Cohen's allegedly fraudulent activities. *Id.* at 27, 51.

The affidavit thus established a nexus between Cohen and the alleged offenses, and between the offenses and his home. There is "substantial evidence in the record" supporting the judge's decision to issue a search warrant for 2419 Long Ridge Road. *See Upton*, 466 U.S. at 728; *Lalor*, 996 F.2d at 1583. For that reason, the warrant is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" under *Leon*, 468 U.S. at 923.

Further, a warrant is facially valid, if "[it] was based on probable cause and supported by a sworn affidavit, and it described particularly the place of the search" and the items to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004). The warrant in this case appears to have met those requirements. *See* Gov. Ex. 3. Also, there is no evidence that the issuing judge "abandoned" his or her neutral role in signing the warrant, or that the judge was "misled" by false information. Thus, Cohen is not entitled to suppression under any of the *Leon* exceptions.

b.   Tserkis-Mullins's Qualifications

Cohen argues that Tserkis-Mullins's position as postal inspector and lack of training and experience in "highly specialized property and casualty insurance companies" and "captive insurance companies" rendered her unqualified to "to make qualified decisions regarding the operations of a sophisticated insurance company such as [Indemnity] and . . . Cohen . . . ." ECF No. 76 at 4. The government argues that Tserkis-Mullins was legally and factually qualified to apply for the search warrant. ECF No. 284 at 16-18.

Postal inspectors may apply for search warrants. *See* Fed. R. Crim. P. 41(a)(2)C)(defining a "federal law enforcement officer" who may apply for a warrant as "a government agent . . . who is engaged in enforcing the criminal laws and is within

any category of officers authorized by the Attorney General to request a search warrant."); 18 U.S.C. § 3061 (2012)(authorizing postal inspectors "to investigate criminal matters related to the Postal Service and the mails" to enforce related laws); 28 C.F.R. §§ 60.2, 60.3 (including the U.S. Postal Inspection Service among the agencies that have law enforcement officers authorized to request search warrants).

Additionally, Tserkis-Mullins has worked for the Postal Inspection Service for over a decade, is assigned to its fraud team investigating mail and wire fraud and money laundering, and had been trained in mail and mortgage fraud and related offenses.  Gov. Ex. 3 at 6-7.  Tserkis-Mullins's experience qualified her to swear out the affidavit.  Moreover, Tserkis-Mullins disclosed that other FBI, IRS, and Homeland Security agents had been involved in the investigation.  *Id.* at 7. Accordingly, Cohen's assertion lacks merit.

> c.   Exculpatory Evidence

Cohen contends that Tserkis-Mullins omitted from the affidavit that Cohen had been "banished" from 950 Ridgebrook Road and "the factual evidence from the [Indemnity] proceedings" that shows that "multiple parties inhabited Cohen's office" from "his banishment" to the search date.  ECF No. 76 at 5.  Cohen further contends that Tserkis-Mullins omitted that "all of Cohen's banking and personal information" had been located at

950 Ridgebrook Road when she averred that such information might
be found at 2419 Long Ridge Road, and that Delaware officials
had seized his work computer. *Id.* at 6-7. Finally, Cohen
contends that Tserkis-Mullins omitted the "blunderous conduct by
the State of Delaware and [its] agents" when she noted the
"suspicious absence" of electronic data at 950 Ridgebrook Road
that might be found at 2419 Long Ridge Road. *Id.* at 7. Cohen
asserts that these omissions are material under *Franks v.
Delaware*, 438 U.S. 154 (1978). *Id.* at 9.

The government contends that Tserkis-Mullins did not omit
material information from the affidavit, and Cohen has not
demonstrated the need for a *Franks* hearing. ECF No. 284 at 18-
23.

Under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the
defendant may challenge the veracity of sworn statements made by
officers in their application for a search warrant under certain
circumstances. "In the Fourth Circuit, a *Franks* hearing is
warranted if: (1) the defendant makes a substantial preliminary
showing that a false statement knowingly and intentionally, or
with reckless disregard for the truth, was included by the
affiant in a warrant affidavit, and (2) the defendant shows that
the false information was essential to the probable cause
determination." *United States v. Blake*, Criminal No. WMN-06-
0394, Civil No. WMN-11-80, 2012 WL 78754, at *4 (D. Md. Jan. 10,

2012) (*citing United States v. Colkley*, 899 F.2d 297, 300 (4th

Cir. 1990); *Simmons v. Poe*, 47 F.3d 1370, 1383 (4th Cir. 1995)).

Affidavits supporting search warrants are presumed valid.

*Franks*, 438 U.S. at 171.  To overcome that presumption, "[t]he

defendant must not only point out specifically the portion of

the affidavit that is claimed to be false and give reasons why

it is false, but he must also furnish '[a]ffidavits or sworn or

otherwise reliable statements of witnesses' or explain their

absence." *United States v. Tate*, 524 F.3d 449, 454 (4th Cir.

2008) (*citing id.*).  The burden of making this showing is

"heavy."  *Id.*  Further, because "an affidavit offered to procure

a search warrant cannot be expected to include every piece of

information gathered in the course of an investigation," when

the defendant claims the warrant is deceptive because it omits

material facts, "his burden increases yet more." *See id.* at

454-55.

As previously noted, Tserkis-Mullins attached Agent Perry's

affidavit supporting the search of 950 Ridgebrook Road to her

affidavit.  Agent Perry's affidavit states that Cohen had been

removed from Indemnity's Board in August 2013, the company was

in "court-ordered receivership," and his office had been left

largely unchanged since he left.  *See* Gov. Ex. 1 at 29-30, 32,

46.  Tserkis-Mullins also attached the January 2, 2014 Delaware

Chancery Court Opinion that describes at length the Delaware

civil proceedings and Cohen's removal from Indemnity.   Gov. Ex.
3 at 51.   Further, Cohen has provided no evidentiary support for
the other alleged omissions or explained its absence; thus,
Cohen has not satisfied his "heavy" burden to show that a *Franks*
hearing is warranted.   *See United States v. Pettiford*, 337 F.
App'x 352, 354 (4th Cir. 2009) (*quoting Franks*, 483 U.S. at
171); *see also United States v. Tate*, 524 F.3d 449, 455 (4th
Cir. 2008) ("merely showing an intentional omission of a fact
from a warrant affidavit does not fulfill *Franks'*
requirements").   Accordingly, Cohen's motion to suppress
evidence from the search of 2419 Long Ridge Road will be denied.

> 3.    Motion to Suppress Electronic Data and Written
>        Documentation

Cohen argues that although he consented to the search of
his Lexus, "the consent did not encompass any search of
electronic data or written documentation" found in the car.   ECF
No. 189 at 1.[77]   Cohen further appears to argue that the
government exceeded the scope of its warrants when it searched
within folders and directories in other seized electronic
devices.   *Id.* at 1-3.[78]   The government argues that Cohen

---

[77] The government found a container-type clipboard with papers
inside and attached to the outside, and a voice recorder.   Gov.
Ex. 8.

[78] Although Cohen generally seeks the suppression of all hard
copy and electronic evidence seized from 2419 Long Ridge Road,
950 Ridgebrook Road, and Checks N' Keno on Reisterstown Road,

consented to the search of the Lexus "without restriction."  ECF

No. 284 at 44.  The government further contends that "the search

warrants have imposed restrictions on the seizure and search of

the [electronic] media," and Judge Sullivan has addressed

Cohen's motion to have electronic data returned.  *Id.* at 49-50.

>            a.   Consent

Ordinarily, the Fourth Amendment requires the police to

obtain a warrant before conducting a search. *Schneckloth v.*

*Bustamonte,* 412 U.S. 218, 219 (1973).  However, consent to a

search is an exception to the Fourth Amendment's warrant

requirement, *see id.,* and is valid if it is "(1) knowing and

voluntary and (2) given by one with authority to consent,"

*United States v. Buckner,* 473 F.3d 551, 554 (4th Cir. 2007)

(internal quotations and citations omitted).  Consent is

voluntary if--under the totality of the circumstances--it

represents the suspect's "essentially free and unconstrained

choice."  *See United States v. Watson,* 423 U.S. 411, 424, 96 S.

Ct. 820, 828, 46 L.Ed.2d 598 (1976).  Factors indicating whether

consent was voluntary include "the characteristics of the

---

his legal argument focuses on the search of electronic devices.
ECF No. 189 at 1-3.  Cohen seeks a *Franks* hearing; however, he
has not identified any alleged omissions in his motion.  *See id.*
Cohen also seeks the appointment of a special master or
magistrate judge to review every file in the devices because of
the "intermingling" of data within and outside the warrant's
scope.  *Id.* at 3.  As noted *supra* Section II.B.1.a, Cohen lacks
Fourth Amendment standing to challenge the 950 Ridgebrook Road
search.  However, his motion also fails on the merits.

accused (such as age, maturity, education, intelligence, and experience) and the conditions under which the consent to search was given (such as the officer's conduct, the number of officers present, and the duration of the encounter)." *United States v. Boone,* 245 F.3d 352, 361-62 (4th Cir. 2001).

Once consent is given, any search within the scope of that consent is reasonable. *See United States v. Ortiz,* 669 F.3d 439, 445 (4th Cir. 2012). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood" to be the scope of consent "by the exchange between the officer and the suspect?" *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991)(general consent to search a car without "any explicit limitation" reasonably extended to search of paper bag lying on the car's floor). Cohen has challenged the scope--not the voluntariness--of his consent.

A "suspect may impose limits on the items or areas subject to the . . . search, just as he may refuse to allow any search whatsoever in the absence of a warrant." *United States v. Jones,* 356 F.3d 529, 534 (4th Cir.2004). Here, Cohen signed a consent form stating, *inter alia,* that he had the right to refuse consent and "*any* incriminating evidence [found inside the car] . . . may be used against [him] in court." Gov. Ex. 7

(emphasis added).  Although Cohen did not explicitly consent to searches of containers or the voice recorder, he did not impose any restrictions on the search.  Hr'g Tr. at 19-20, 34-35, 38-39; Gov. Ex. 7.

Further, Cohen gave his consent after making a lengthy statement to Agents Perry and Costello describing "major financial frauds" and being questioned about allegedly threatening items found in the home, including firearms and handwritten notes about targeting "DE Folks" and "MD government and judges."  Hr'g Tr. at 14-17; Gov. Ex's 4, 6 at 18.  Thus, it was entirely reasonable for agents to conclude that Cohen's consent encompassed containers and other items in which evidence of fraudulent and threatening activity may be found; particularly when, as here, directions to the Delaware Lieutenant Governor's and Vice Chancellor Laster's home had been attached to the clipboard's exterior.  *See Jimeno*, 500 U.S. at 251 ("[I]t was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs.").  Neither the clipboard not the voice recorder appeared to have a locking mechanism that the agents had to break to access internal content.  *See Jones*, 356 F.3d at 534 (although consent "would not likely permit officers to *break into* a locked container," "when a suspect gives his general and unqualified

consent for an officer to search a particular area, the officer
does not need to return to ask for fresh consent to search a
closed container located within that area").[79]  Accordingly,
Cohen has not shown that agents exceeded the scope of his
consent.

b.    Electronic Data

Cohen further asserts that the government needs "probable
cause to search within each file and folder within each data
device" seized from various locations and the "warrant must
specifically identify the extensions for each file to be
searched."  ECF No. 189 at 2.  Cohen's stringent requirements,
however, are not those of the Fourth Circuit.[80]

---

[79] Cohen relies on *United States v. Carey*, 172 F.3d 1268 (10th
Cir. 1999), which suppressed evidence of child pornography found
on a computer during a search for evidence of drug crimes, *see*
ECF No. 189 at 1.  The Fourth Circuit has criticized *Carey*,
however, for imposing an "inadvertence" requirement on the
plaint view doctrine.  *See United States v. Williams*, 592 F.3d
511, 523 (4th Cir. 2010).  Further, the Tenth Circuit limited
*Carey* to the facts of that case, 172 F.3d at 1276, and later
clarified that its decision "merely stands for the proposition
that law enforcement may not expand the scope of their search
beyond its original justification" and does not preclude
officers from opening electronic files when there is probable
cause to believe the device contains evidence for the crime
underlying the search and seizure, *see United States v. Fiscus*,
64 F. App'x 157, 164 (10th Cir. 2003).

[80] Cohen again relies on *Carey*, which, as noted *supra* note 79,
was criticized by the Fourth Circuit in *Williams*.  Cohen also
relies on *United States v. Stierhoff*, 477 F. Supp. 2d 423, 443
(D.R.I. 2007) *aff'd*, 549 F.3d 19 (1st Cir. 2008), which, in
turn, relies in part on *Carey*.  *See* ECF No. 189 at 2; *Stierhoff*,
477 F. Supp. 2d at 443, 448.

In *Williams*, the search warrant at issue authorized the
search and seizure of "[a]ny and all computer systems and
digital storage media, . . . documents, photographs, and
[i]nstrumentalities" related to the offenses of computer
harassment and threats of death and bodily harm, 592 F.3d at
520.   Thus, the Fourth Circuit held, "the warrant impliedly
authorized officers to open each file on the computer and view
its contents, at least cursorily, to determine whether the file
fell within the scope of the warrant's authorization."   *Id.* at
521 ("[T]he owner of a computer, who is engaged in criminal
conduct on that computer, will not label his files to indicate
their criminality"); *see United States v. Gray*, 78 F. Supp. 2d
524, 529 (E.D. Va. 1999)(search of computer subdirectories did
not exceed the search warrant's scope because "searches of
computer records are no less constitutional than searches of
physical records, where innocuous documents may be scanned to
ascertain their relevancy")(internal quotation marks and
citation omitted).[81]

---

[81] *See also United States v. Hunter*, 13 F.Supp.2d 574, 584 (D.
Vt. 1998)("[U]ntil technology and law enforcement expertise
render on-site computer records searching both possible and
practical, wholesale seizures, if adequately safeguarded, must
occur"; officers permissibly reviewed electronic documents to
determine their relevance to the charged offenses); *United
States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31, 62 (D.
Conn. 2002)(same); *United States v. Jack*, No. CR S-07-0266 FCD,
2009 WL 453051, at *4 (E.D. Cal. Feb. 23, 2009)(same).

Here, the search warrant authorized the seizure of computers and electronic devices and stated *Williams*-compliant procedures by which the data found therein would be reviewed. *See* Gov. Ex. 3 at 3-4, 18-19.  Thus, agents did not need probable cause to search each electronic file.  Accordingly, Cohen's motion to suppress will be denied.[82]

         4.    Motion to Suppress Evidence from the Consensual
               Search of 950 Ridgebrook Road

Cohen asserts that Miceli lacked authority to consent to the government's search of 950 Ridgebrook Road and its servers because IDG leased the premises.  ECF No. 256.[83]  The government contends that Miceli--as the Commissioner's agent--was authorized to consent to the search because IDG had been included in the Delaware Court of Chancery's amended seizure order, which had been affirmed by the Delaware Supreme Court and domesticated in the Circuit Court for Baltimore County.  ECF No. 299 at 1-2.

---

[82] Cohen argued that the government's delay in reviewing the electronic evidence merits its suppression.  ECF No. 189 at 3. Judge Sullivan has addressed Cohen's related motion for the return of seized property, ECF No. 109, and found it unavailing, ECF No. 290 at 4-5.

[83] Cohen contends that he was the only agent authorized to consent to the search.  ECF No. 256 at 1.

As discussed above,[84] Cohen lacks standing to object to the search of 950 Ridgebrook Road. However, Cohen's motion also fails on the merits. Consent to a search is valid if it is "(1) knowing and voluntary and (2) given by one with authority to consent." *Buckner*, 473 F.3d at 554. Here, control over IDG-- and, thus, the 950 Ridgebrook Road lease--had been transferred to the Commissioner, and, by extension, her agent. *See* Del. Sup. Crt. Op. at 42-46; Del. Ct. Chancery Op. at 15. Thus, Miceli's consent is valid. *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797, 111 L. Ed. 2d 148 (1990)(the person whose property is searched may consent to the search) (*citing Schneckloth*, 412 U.S. at 218). Accordingly, Cohen's motion to suppress will be denied.[85]

C.   Motion to Disqualify the Office of the U.S. Attorney

Cohen seeks the disqualification of the Office of the U.S. Attorney for the District of Maryland and the appointment of a special prosecutor on the basis that the "matter has been irreversibly tainted . . . [because of] the use of privileged material." ECF No. 110 at 1-4. Cohen raises the same arguments as his motion to suppress evidence on the basis of attorney-

---

[84] *See supra* Section II.B.1.a.

[85] Cohen's motion to shorten time to trial raises the same arguments stated in his motions to dismiss and suppress evidence, ECF No. 108 at 1, which the Court has found unavailing. Accordingly, that motion will be denied.

client privilege, the work-product doctrine, and the Sixth

Amendment, ECF No. 93.  *See* ECF No. 110 at 3.  The government

argues that Cohen has not met his burden of showing that

disqualification is merited.  ECF No. 133 at 1.

The cases on which Cohen relies involve the dis-

qualification of attorneys based on prior representation of a

now-opposing party,[86] and do not support disqualification of the

entire U.S. Attorney's Office.[87]  In any event, the parties agree

that because "disqualification [of opposing counsel] is a

drastic measure," Cohen "bears a high standard of proof to show

that disqualification is warranted."  *See Buckley*, 908 F. Supp.

at 304; ECF Nos. 110 at 2; 133 at 1.

To support his assertion that government agents have

reviewed privileged material, Cohen relies on a statement in

---

[86] *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 307 (D. Md. 1995)(plaintiff's former attorney barred from representing defendant in "substantially related" action); *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724 (E.D. Va. 1990)(same).

[87] *See, e.g., United States v. Goot*, 894 F.2d 231, 237 (7th Cir. 1990) (U.S. Attorney's Office need not be disqualified when defendant's attorney joined the office); *In re Matter of Grand Jury Investigation of Targets*, 918 F. Supp. 1374, 1378 (S.D. Cal. 1996)(same); *see also In re Grand Jury 91-1*, 790 F. Supp. 109, 112-13 (E.D. Va. 1992)(rule imputing disqualification to an entire private firm does not apply to a U.S. Attorney's Office because "the federal courts addressing this issue have recognized that there is quite a difference in the relationship between law partners and associates in private law firms and lawyers representing the government.")(*citing United States v. Caggiano*, 660 F.2d 184, 190 (6th Cir. 1981)).

Tserkis-Mullins's 2419 Long Ridge Road search warrant affidavit identifying emails Cohen had sent to himself.  ECF No. 174 at 1. Cohen argues that his "emails are privileged material comprised of work product in preparation of the litigation of this matter."  *Id.*

Cohen's general assertion that his "emails are privileged" is insufficient for the Court to find that his emails are protected work product.  *See In re Martin Marietta Corp.*, 856 F.2d at 626.  That the emails related to the matters under investigation--for example, one email stated "[c]ash was embezzled and I did not want to reveal it until it was recovered--I created the fictional scenario of Susquehanna Bank to cover it up"[88]--does not automatically make them "work product" prepared in anticipation of trial.  *Cf. Goosman v. A. Duie Pyle, Inc.*, 320 F.2d 45, 52 (4th Cir. 1963)(reports prepared after an accident and required by the Interstate Commerce Commission were not protected work product).  Cohen's emails may equally have been prepared as part of the allegedly fraudulent activities.  *Cf. State Farm Fire & Cas. Co. v. Perrigan*, 102 F.R.D. 235, 237 (W.D. Va. 1984)("The courts have made a clear distinction between documents prepared in anticipation of trial and those compiled in the ordinary course

---

[88] Gov. Ex. 3 at 15-16.

of business.")(*quoting* Fed. R. Civ. P. 26(b)(3) advisory committee note).  Accordingly, Cohen has not met his heavy burden of showing that disqualification of the government attorneys prosecuting this case--or the Office of the U.S. Attorney--is merited; his motion will be denied.

D.   Motion for Severance

Cohen seeks to sever counts 28-31 (the obstructing justice counts) from counts 1-27 (the wire fraud, money laundering, and false statements counts).  ECF No. 100.  As grounds, Cohen argues that (1) the alleged acts underlying the obstructing justice counts did not arise out of the same act or transaction as the other counts, (2) there is no direct or evidentiary relationship between the sets of counts, and (3) evidence on the underlying counts "will not be admissible at trial."[89]  *Id.* at 1. The government argues that the counts are properly joined and severance is not required.  ECF No. 120 at 1-5.

Under Fed. R. Crim. P. 8(a), "the indictment . . . may charge a defendant in separate counts with [two] or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or

---

[89] It is unclear if Cohen means evidence of the underlying counts will not be admissible during trial on the obstruction counts, or if he means all evidence tending to prove the other counts will be deemed inadmissible.

plan."   The Fourth Circuit "ha[s] interpreted the latter two prongs of [Rule 8(a)] flexibly, requiring that the joined offenses have a 'logical relationship' to one another." *United States v. Cardwell,* 433 F.3d 378, 385 (4th Cir. 2005)("[V]ery broad joinder" is permitted "because of the efficiency in trying the defendant on related counts in the same trial" thus, joinder is the "rule rather than the exception."); *see also United States v. Hirschfeld,* 964 F.2d 318, 323 (4th Cir. 1992).

Cohen argues that the alleged conduct in counts 1-27 and 28-31 "reflects two distinct schemes."  ECF No. 100 at 1.  The government contends that joinder is appropriate because the "obstruction charges are logically related to the insurance/financial fraud charges" as they are part of the same act or transaction or are constituent parts of a common scheme. ECF No. 120 at 2, 4.

The Fourth Circuit has upheld the joinder of witness tampering charges when the defendant attempted to "obstruct the government's investigation of the [underlying] labor certification fraud counts by attempting to persuade witnesses to lie before the grand jury and flee the jurisdiction before testifying," because "[h]ad the charges been severed, the government would have had to introduce evidence pertaining to the labor certification fraud for the second jury to make sense of the witness tampering charge." *United States v. Mir,* 525

81

F.3d 351, 357 (4th Cir. 2008); *see also United States v. Hornsby*, 666 F.3d 296, 309 (4th Cir. 2012)(witness tampering and fraud counts properly joined because they "related to the same series of events—Hornsby's involvement with the LeapFrog contract and the subsequent investigations").[90]

The same reasoning applies here. The obstructing justice counts charge Cohen with using or attempting physical force against, attempting to kill, and threatening to cause bodily injury to, witnesses to the underlying fraud charges, including Vice Chancellor Laster, and obstructing and attempting to obstruct the special grand juries impaneled in this case.  ECF No. 78 at 18-23; *see also* ECF No. 120 at 3.  Thus, the charges are properly joined.

When joinder is appropriate, Fed. R. Crim. P. 14(a) permits severance "[i]f the joinder of offenses . . . in an indictment .

---

[90] *See also United States v. Foutz*, 540 F.2d 733, 737 (4th Cir. 1976)("When offenses are joined under Rule 8 on the ground that they are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, it is manifest that evidence of one offense would ordinarily be admissible at a separate trial for the other.")(internal quotation marks omitted).  *Accord United States v. Stackpole*, 811 F.2d 689, 693 (1st Cir. 1987)(arson and obstruction counts composed separate conspiracies but were properly joined because "[t]he second conspiracy was formed to protect the first from prosecution"); *United States v. Berardi*, 675 F.2d 894, 900 (7th Cir. 1982)(evidence of extortion and mail fraud established motive for obstruction counts, and evidence of obstruction counts established consciousness of guilt on the extortion and mail fraud counts; thus, they were properly joined).

. . . appears to prejudice a defendant or the government." Prejudice may arise because of "the possibility that a defendant will be convicted based on considerations other than the facts of the charged offense." *See United States v. Hawkins*, 589 F.3d 694, 701 (4th Cir. 2009) (internal quotation marks omitted). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933, 122 L.Ed.2d 317 (1993).

To determine whether severance is merited, courts consider the factual and evidentiary overlap between the counts and the extent to which jury instructions will mitigate risk of prejudice. *United States v. Sellers*, 62 F. App'x 499, 504 (4th Cir. 2003). A defendant seeking separate trials under Rule 14 "has the burden of demonstrating a strong showing of prejudice." *United States v. Goldman,* 750 F.2d 1221, 1225 (4th Cir. 1984).

As discussed above, there is a substantial factual and evidentiary overlap between the fraud and obstruction counts. Although the alleged facts underlying the obstruction counts may be inflammatory, that alone is insufficient to sever the counts. "Speculative allegations as to possible prejudice do not meet the burden of showing" that severance is required. *United*

*States v. Becker*, 585 F.2d 703, 707 (4th Cir. 1978).[91]

Moreover, cautionary instructions will help prevent jury

confusion. *See Sellers*, 62 F. App'x at 504; *United States v.*

*Najjar*, 300 F.3d 466, 475 (4th Cir. 2002)("To the extent there

was any actual prejudice suffered by Najjar by any conflict in

the defenses, we think that the district judge cured such

conflict by proper limiting instructions.").[92]  Cohen has not

carried his burden of proving that severance is merited; thus,

his motion to sever will be denied.

    E.   Objections to the Magistrate's Orders

    Cohen has objected to Judge Sullivan's Orders denying his

motion for temporary and injunctive relief and for a *Farmer*

hearing.  ECF Nos. 153, 286.[93]

    Under the Magistrate Judges Act, 28 U.S.C. § 636, a

district judge may designate a magistrate judge to conduct

---

[91] *Cf. United States v. Hackley*, 662 F.3d 671, 684 (4th Cir. 2011), *as corrected* (Dec. 20, 2011)(drug distribution, felon in possession, and murder for hire counts properly tried together).

[92] *See also Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ("[J]uries are presumed to follow their instructions."); *United States v. LaRouche*, 896 F.2d 815, 831 (4th Cir. 1990)(citing with approval *United States v. Murphy*, 836 F.2d 248, 255-56 (6th Cir. 1988), *cert. denied*, 488 U.S. 924, 109 S.Ct. 307, 102 L.Ed.2d 325 (1988)(no prejudice when obstruction of justice and perjury charges joined with mail fraud charges)).

[93] Cohen captioned ECF No. 153 as a "motion for reconsideration." However, the Court will consider his motion as an objection governed by Rule 59.

hearings (if necessary) and determine nondispositive matters
pending before the Court.  *See* 28 U.S.C. § 636(b)(1)(A); Local
Rule 301.5(a)(D. Md. 2014).  Magistrate judges may also report
proposed findings of fact and recommendations for action on a
dispositive motion, including motions for injunctive relief.
*See* 28 U.S.C. § 636(b)(1)(B); Local Rule 301.5(b)(i).

Under Rule 59, a party may object to a magistrate judge's
order or recommendation within 14 days after being served.  On
nondispositive matters, "[t]he district judge must consider
timely objections and modify or set aside any part of the order
that is contrary to law or clearly erroneous."  Fed. R. Crim. P.
59(a).  Objections to a recommendation on a dispositive matter
are considered *de novo*.  Fed. R. Crim. P. 59(b)(3).

1.   Temporary and Injunctive Relief

Although captioned as a motion for temporary and injunctive
relief, Cohen primarily sought the return of assets seized
pursuant to the government's November 2014 seizure warrants.
ECF No. 68.[94]   Judge Sullivan denied Cohen's motion because the

---

[94] Cohen also moved for the return of seized property under Rule
41(e).  ECF No. 109.  Judge Sullivan initially denied that
motion, then held it *sub curia* to permit Cohen time to file a
reply.  ECF No. 142 at 2.  Cohen's premature objection to Judge
Sullivan's denial of his motion--filed when the motion was *sub
curia*--is moot.  *See* ECF No. 153 at 1, 3-4.  Cohen later filed
another request for "Rule 59 Review of Magistrate's Order ECF
142 and Reply to Government's Opposition to ECF 109."  ECF No.
165.  Because that filing again sought relief from Judge
Sullivan's initial denial of Cohen's motion for the return of

seizures were lawfully conducted pursuant to valid search warrants.  ECF No. 142 at 1-2.  To the extent Cohen sought injunctive relief barring additional seizures, Judge Sullivan recommended that Cohen's motion be denied because Cohen had not provided--nor had Judge Sullivan found--any legal basis for providing temporary injunctive relief.  *Id.* at 1-2 & n.1.  Cohen objected to Judge Sullivan's ruling on the basis that the search warrants "failed to establish probable cause" for the seizures. ECF No. 153.  The government opposed Cohen's motion.  ECF No. 172.

"Criminal forfeitures are imposed upon conviction to confiscate assets used in or gained from certain serious crimes."  *Kaley v. United States*, 134 S. Ct. 1090, 1094, 188 L. Ed. 2d 46 (2014)(*citing* 21 U.S.C. § 853(a)).[95]  Section 853(e) permits pre-trial restraining orders or injunctions to preserve forfeitable property when there is "probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime."  *Id.* at 1095.  When a § 853(a) order

---

property, *see* ECF No. 165 at 3(asking the Court to "grant the pending Rule 41 Motion and return the seized property"), which, as noted, was withdrawn, that objection will also be overruled as moot.  On April 17, 2015, Judge Sullivan formally denied Cohen's motion.  *See* ECF No. 290 at 4-5.  Cohen has not renewed or filed an objection to that ruling.

[95] 21 U.S.C. § 853 applies to criminal forfeiture proceedings. *See* 28 U.S.C. § 2461(c).

"may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property."  21 U.S.C. § 853(f). In the Fourth Circuit, "substitute assets are subject to pretrial seizure."  *United States v. Martin*, 460 F. Supp. 2d 669, 677 (D. Md. 2006) (*citing In re Billman*, 915 F.2d 916, 917 (4th Cir. 1990)).[96]

A reviewing court shows "great deference" to the original determination of probable cause.  *United States v. Blackwood*, 913 F.2d 139, 142 (1990) (*quoting Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969)).  "[A] reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the [original] decision to issue the warrant."  *Massachusetts v. Upton*, 466 U.S. 727, 728, 104 S. Ct. 2085, 80 L.Ed.2d 721 (1984).

Here, the seizure warrant affidavits traced the fraudulently-obtained funds to the Infiniti G37 and the two M&T Bank accounts seized as proceeds of the alleged offenses.  *See* ECF Nos. 86-5, 86-8.  As to the substitute assets, the seizure

---

[96] Although *In re Billman* applied the RICO forfeiture provision, 18 U.S.C. § 1963, the Fourth Circuit has held that "[t]he restraint and substitute assets provisions of § 853 are identical to those in the RICO statute, and we see no reason to construe them differently."  *United States v. Bollin*, 264 F.3d 391, 421-22 (4th Cir. 2001).

warrant affidavits amply demonstrated that the seized property

belonged to Cohen.  *See, e.g.*, ECF Nos. 86-1, 86-7; *see also* 21

U.S.C. § 853(p).[97]

To the extent Cohen seeks an injunction barring further

seizures, as noted above, § 853 permits pretrial restraint of

assets--including substitute assets.  *See In re Billman*, 915

F.2d at 917; *see also Kaley*, 134 S. Ct. at 1094 (pretrial asset

restraint furthers the purpose of forfeiture, which is to

"punish wrongdoing, deter future illegality, . . . lessen the

economic power of criminal enterprises, . . . recompense

victims of crime, improve conditions in crime-damaged

communities, and support law enforcement activities like police

training")(internal quotation marks and citations omitted).

Accordingly, Cohen's objections will be overruled.  The

Court will adopt Judge Sullivan's recommendation that temporary

and injunctive relief be denied.[98]

---

[97] To the extent Cohen complains that the government seized
property that belongs to or was bought by his wife or others,
ECF No. 172 at 1, "[p]roperty in which a third party has an
interest may be subject to pre-trial restraint so that the
Government's forfeitable interest in the property may be
preserved."  *United States v. Park*, 825 F. Supp. 2d 644, 647 (D.
Md. 2011).  Section 853(n) states the procedures by which those
third-parties--not Cohen--can challenge a final forfeiture
order.  *See* 21 U.S.C. § 853(n).

[98] Relatedly, Cohen moves for judicial action to "immediately
curtail [the government's] attempts" to intimidate "Cohen's
family and friends" by allegedly "terrifying" them into
believing "that if they send any money to Cohen while detained,

2.   *Farmer* Hearing

Cohen sought a hearing under *United States v. Farmer*, 274
F.3d 800 (4th Cir. 2001) "to liberate funds seized by the
government" to hire counsel of his choice.  ECF No. 163.   Judge
Sullivan denied Cohen's motion because he had failed to show
that he was entitled to hearing.  ECF No. 290 at 2-3.  Cohen
objects on the basis that discovery procedures "prevented him
from submitting any evidence to support his [m]otion."  ECF No.
286 at 1.  The government contends that the appointment of new
standby counsel, a paralegal, and computer forensic support,
renders Cohen's motion moot.  ECF No. 314.

Since November 17, 2014, Cohen has proceeded *pro se*.  *See*
ECF No. 66.  Cohen's motions for a *Farmer* hearing and for
reconsideration of Judge Sullivan's denial thereto appear to
assert the need for seized funds to pay for standby counsel of
his choice.  *See* ECF Nos. 163 (Cohen has chosen to represent
himself, moved to terminate current standby counsel, and is
seeking funds to pay for new counsel); 286 (requesting to
interview prospective candidates for standby counsel and to use
seized property to "hire the attorney of his choice").  *Farmer*,

---

they will be arrested and have their assets seized."  ECF No.
118 at 1.  The government opposed the motion because it was a
"personal diatribe."  ECF No. 141.  It is unclear if Cohen is
seeking the Court's intervention in matters related to asset
seizure; in any event, his assertions are unsupported and his
motion will be denied.

however, implements a defendant's Sixth Amendment right to the
assistance of counsel, 274 F. 3d at 804 (identifying the
defendant's private interest as "a qualified Sixth Amendment
right to use wholly legitimate funds to hire the attorney of his
choice" to determine whether due process required an adversarial
hearing on whether seized funds should be released).

In contrast, there is no constitutional right to standby
counsel, or to "hybrid representation" as occurs when the
defendant and standby counsel share the duties of
representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 183, 104
S. Ct. 944, 953, 79 L. Ed. 2d 122 (1984); *Schaefer v. United
States*, No. 4:05-CR-01133-RBH-1, 2015 WL 1549148, at *4 (D.S.C.
Apr. 8, 2015)(citing cases that stand for the proposition that
"[w]ithout a constitutional right to standby counsel, a
defendant generally cannot prove standby counsel was
ineffective"); *Cassell v. Harkelroad*, No. 5:04CV67-3-MU, 2006 WL
2927191, at *6 (W.D.N.C. Oct. 10, 2006)("There is no
[c]onstitutional [r]ight to [s]tandby [c]ounsel."). Cohen has
not provided--nor has the Court located--authority for the
proposition that due process requires a hearing to determine
whether funds that would be used for *standby* counsel were seized
without probable cause. For that reason--and in light of
Cohen's repeated desire to represent himself--*Farmer* is
unavailing.

90

Even if *Farmer* applied to the use of seized funds to pay for standby counsel of Cohen's choice, he has not made the requisite showing for a hearing. *Farmer* requires a post-restraint hearing when the defendant shows (1) a *bona fide* need to use seized assets, and (2) there is the risk of an erroneous deprivation of a due process right without a hearing. *See Farmer*, 274 F.3d at 803-04. "District courts enjoy broad discretion to determine the need for hearings of this sort." *Id.* at 805-06. Judge Sullivan found that Cohen had met the first requirement because he had been declared indigent; however, Cohen had not met the second requirement because he had not shown that there was any risk of erroneous deprivation. ECF No. 290 at 2-3.

Cohen relies on *United States v. Patel*, 888 F. Supp. 2d 760, 770 (W.D. Va. 2012), which states that "if [the defendant] can make the requisite threshold showing of necessity, then due process requires that the court grant his request for a *Farmer* hearing," to argue that he also met the second requirement. *See* ECF No. 286 at 3.[99] Other judges, however, including those in the District of Maryland, have held that a *Farmer* hearing is not required unless the defendant makes a preliminary showing that

---

[99] Although Cohen cites the post-*Farmer* hearing *Patel* opinion, *see* ECF No. 286 (*citing United States v. Patel*, 949 F. Supp. 2d 642 (W.D. Va. 2012)), he quotes from the pre-hearing opinion as support for his contention that a hearing is merited, *see id.*

assets were improperly seized. *See United States v. Park*, 825 F. Supp. 2d 644, 646 (D. Md. 2011) (interpreting *Farmer* as requiring a hearing when the defendant "demonstrates that he has no other assets available with which to retain counsel, and defendant makes a *prima facie* showing that the restrained property is not subject to forfeiture"); *United States v. Ziadeh*, 230 F. Supp. 2d 702, 704 (E.D. Va. 2002)(denying defendant a hearing because he had not shown "that the government has (1) seized or restrained all of the defendant's assets and (2) that some of those assets are not subject to forfeiture").

*Park* and *Ziadeh* are consistent with *Farmer*'s holding. In explaining when due process requires a hearing, *Farmer* quoted *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998) with approval: "Due process does not *automatically* require a hearing and a defendant may not simply ask for one." *See Farmer*, 274 F.3d at 805 (emphasis added). Under *Jones*, "[a] defendant must also make a *prima facie* showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the . . . offense," 160 F.3d at 647 (first alteration and emphasis added) (other alterations, internal quotation marks, and citation omitted). Accordingly, *Farmer* granted the defendant a hearing because his

attorney had sworn that a customs agent had acknowledged that legitimate--i.e., non-forfeitable--property had been seized. *Farmer*, 274 F.3d at 806.  Cohen has made no such showing here. Therefore, Judge Sullivan properly denied Cohen a *Farmer* hearing, and Cohen's objection will be overruled.[100]

> F.    Motions for Rule 404(b) and Rule 12(b)(4) Notice

Cohen seeks a firm date by which the government must provide notice under Fed. R. Evid. 404(b).[101]  ECF No. 182.  The government argues that the rule requires "reasonable notice" and not a "specific amount of notice."  ECF No. 219 at 1.

Upon request by the defendant in a criminal case, Rule 404(b)(2) requires the prosecutor to "provide reasonable notice of the general nature of [Rule 404(b)] evidence that the prosecutor intends to offer at trial."  Rule 404(b) does not require the government to identify the specific evidence on which it will rely or identify witnesses that will testify about

---

[100] Cohen also objects to Judge Sullivan's oral "refus[al]" to appoint standby counsel and paralegal support or permit Cohen to retain his discovery notes.  ECF No. 307.  That objection has been rendered moot by Judge Sullivan's appointment of standby counsel and granting of Cohen's request to use Criminal Justice Act funds to hire paralegal services and a computer forensic service provider, *see* ECF Nos. 290 at 2; 294.

[101] Under Rule 404(b)(1), evidence of a crime, wrong, or other act is inadmissible to prove a person's "character," in order to show that on a particular occasion, the person acted in accordance with the "character."  However, under Rule 404(b)(2), such evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

the evidence. *See United States v. Graham*, 468 F. Supp. 2d 800, 802 (E.D.N.C. 2006); *see also United States v. Savage*, 5:12-CR-351-F-1, 2013 WL 719492, at *1 (E.D.N.C. Feb. 27, 2013) ("The rule does not however entitle the defendant to the discovery of the 404(b) evidence itself.").

On March 20, 2015 the government provided notice of Rule 404(b) evidence and averred that it would continue to provide notice as necessary. *See* ECF Nos. 219 at 1; 242.[102]

Several courts in this Circuit have held that notice provided one week before trial--even in cases with serious charges and multiple offenses--discharges the government's obligation to provide "reasonable" notice under the Rule. *See, e.g., Graham*, 468 F. Supp. 2d at 802; *Savage*, 2013 WL 719492, at *2; *United States v. Artis*, 5:12-CR-202-D, 2012 WL 4893957, at

---

[102] The government intends to offer evidence of Cohen's (1) involvement in a fraudulent auto loan scheme in connection with "Auto Relief Group LLC"; (2) improper access of Indemnity's computer systems after Delaware regulators and the company's Board barred Cohen from 950 Ridgebrook Road; and (3) improper recording of conversations at Indemnity in or after June 2013. ECF No. 242 at 1-2.

*1 (E.D.N.C. Oct. 13, 2012).[103]  Accordingly, Cohen's motion for a Rule 404(b) notice deadline will be denied.[104]

Cohen also seeks notice of evidence arguably subject to suppression under Fed. R. Crim. P. 12(b)(4)(B).[105]  ECF No. 192. The government has provided Cohen with notice of its intent to offer certain evidence in its case-in-chief and will provide additional notice as necessary.  *See* ECF No. 229.  Accordingly, Cohen's motion will be denied without prejudice.

G.    Motion for Jury Determination on Forfeiture

Cohen seeks a jury determination on forfeiture under Fed. R. Crim. P. 32.2(b)(4) to establish "the nexus between the crime and [his] property."  ECF No. 107 at 1.  The government argues

---

[103] *See also United States v. Armstrong*, 257 F. App'x 682, 686 (4th Cir. 2007) (district court did not abuse discretion in admitting Rule 404(b) evidence when government provided notice one week in advance of trial).

[104] The Court's ruling does not bar Cohen from raising lack of reasonable notice as grounds for suppression later in the proceedings; then the Court will address the merits of such a motion.

[105] Rule 12(b)(4)(B) provides that

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

Fed. R. Crim. P. 12(b)(4)(B).

that the Court--not the jury--determines the amount of money
Cohen would be ordered to pay.  ECF No. 127 at 1.

Under Rule 32.2(b)(4), "[i]n any case tried before a jury,
if the indictment or information states that the government is
seeking forfeiture, the court must determine before the jury
begins deliberating whether either party requests that the jury
be retained to determine the forfeitability of *specific property*
if it returns a guilty verdict." (emphasis added).  However,
when the government seeks a personal money judgment and not
property, the Court determines the amount of money the defendant
must pay.  *See United States v. Perkins*, 994 F. Supp. 2d 272,
275 (E.D.N.Y. 2014).

Here, the government seeks a combined personal money
judgment of $100,866,667.67 if it succeeds on counts one to
fifteen and twenty-one to twenty-two.  ECF No. 78 at 24.  If the
government cannot recover the full amount of the judgment, it
seeks forfeiture of substitute property, including 2419 Long
Ridge Road and 1 Cooper Court, up to that amount.  *Id*. at 25.
"[A]n order authorizing forfeiture of substitute assets . . .
does not require a jury determination because it does not at all
increase the amount of forfeiture." *United States v. Alamoudi*,
452 F.3d 310, 315 (4th Cir. 2006).  Thus, a jury determination
on forfeiture is not required; Cohen's motion will be denied.

96

H.    Motions *in Limine*

Cohen moves *in limine* to preclude hearsay statements, for "an order . . . to forewarn the prosecution to act appropriately," to bar the use of physical evidence at trial that he has been unable to timely review, and to be declared a qualified witness capable of authenticating Indemnity's (and related business's) business records,. ECF Nos. 193, 206, 207, 273. The government opposes the motions. ECF Nos. 228, 244, 245, 310.[106]

Cohen has not identified any statements that are purportedly hearsay; thus, his motion is premature and will be denied without prejudice to renew his motion at the appropriate time. His assertions of "improper discretions and reckless actions by the prosecution" are unsupported; that motion will be denied. At a March 30, 2015 hearing, Judge Sullivan noted that

---

[106] Cohen has also moved *in limine* to call government witnesses as adverse witnesses if the government does not call them. ECF No. 308. Cohen has not identified those witnesses or the necessity of their testimony. *See id.* Although it is unclear whether Cohen seeks to subpoena those witnesses, Cohen contends that "[t]he Court has been unresponsive to [his] multiple requests for guidance on the issuance of subpoenas for witnesses to appear at trial." *Id.* However, Cohen has been notified about Fed. R. Crim. P. 17(b)'s requirements for submitting an *ex parte* application to the Court to issue a subpoena for a named witness. *See* ECF No. 280 at 1 n.1. Although the government's response to this motion is not yet due, the Court will deny Cohen's motion without prejudice to renew his request when he is able to identify the witnesses "and the necessity of the witness's presence for an adequate defense." *See* Fed. R. Crim. P. 17(b).

arrangements had been made for Cohen to review physical evidence; thus, that motion will be denied as moot.

As to Cohen's motion to be declared a qualified witness, Cohen "seeks a ruling that will permit [him] to authenticate documents produced in evidence that are in the possession of the government" under Fed. R. Evid. 803(6)[107] and 902(11).[108]   ECF No. 273 at 1-2.   Cohen declares--in a conclusionary fashion--that he has

> reviewed certain documents in the discovery provided
> by the government, that were made at or near the time
> of the occurrence of the matters set forth in them and
> were made by a person with knowledge of the matters
> set forth in them, and that they are true and accurate
> copies of the business records kept in the regular
> course of business of Indemnity Insurance Corporation,
> RRG and or IDG Companies, LLC. I am knowledgeable and
> familiar with the practices of the aforementioned

---

[107] Fed. R. Evid. 803(6) governs the business record hearsay exception.

[108] Fed. R. Evid. 902(11) provides that "Certified Domestic Records of a Regularly Conducted Activity:" are self-authenticating when they comply with "Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court."  However, "[b]efore the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them."  *Id; see also United States v. Santana*, 352 F. App'x 867, 872 (4th Cir. 2009)(unpublished)(per curiam)("[Rule 902(11)] states that records need not be authenticated at trial if they are accompanied by a written declaration of [their] custodian or other qualified person attesting that the records meet each of the requirements of Rule 803(6)."(internal quotation marks and citation omitted).

entities related to the creation and maintenance of
business records.

*Id.* at 2.  The government asserts that Cohen's absence from 950

Ridgebrook Road may render him unable to authenticate documents

and that he cannot seek to admit documents "until a proper

evidentiary foundation [has been laid] during trial."  ECF No.

310 at 1.[109]

"Rule 902(11) . . . affords a means of authenticating

business records under Rule 803(6), one of the most used hearsay

exceptions, without the need for a witness to testify in person

at trial."  *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 552

(D. Md. 2007); *see also Rambus, Inc. v. Infineon Technologies*

*AG*, 348 F. Supp. 2d 698, 701 (E.D. Va. 2004)("[I]n lieu of live

testimony, the foundation for admissibility of a business record

may be established by a certification that complies with Rule

902(11).").  However, beyond Cohen's identification of "certain

documents" produced by the government, the Court is unable to

ascertain which documents Cohen seeks to authenticate or admit.

*See Rambus, Inc.*, 348 F. Supp. 2d at 700-01 ("Rule 902(11)

states that a custodian or other qualified witness must certify

---

[109] The government "intends to oppose any attempt by Cohen to
introduce documents at trial unless the government has been able
to verify the authenticity of the documents, an appropriate
sponsoring witness is available, or the defendant has provided
the government an opportunity to stipulate to the validity of
the records."  ECF No. 310 at 2.

in the written declaration that the *proffered document* meets three requirements which are listed without ambiguity"; resolving motion *in limine* to preclude 148 different documents) (emphasis added).[110]  Accordingly, the Court will deny Cohen's motion without prejudice.[111]

    I.   Motions for Judicial Notice

    Cohen moves this Court to take judicial notice of his attempt to provide "disclosure of the defense discovery materials" to the government and its refusal to acknowledge or respond, and of the increased number of prosecutorial misconduct cases in the Fourth Circuit since 1998.  ECF Nos. 213, 238.[112] The government asserts that judicial notice of a disputed issue--such as adequacy of notice--and the number of prosecutorial misconduct cases is inappropriate.  ECF Nos. 255, 277.

    Under Fed. R. Evid. 201(b), "[t]he court may judicially notice a[n adjudicative] fact that is not subject to reasonable

---

[110] *See also United States v. Ging-Hwang Tsoa*, No. 1:13CR137 JCC, 2013 WL 5837649, at *2 (E.D. Va. Oct. 29, 2013)(resolving motion to preclude "Rule 902(11) certificates to authenticate the lender files for . . . five [specific] properties").

[111] If Cohen wishes to revise his attempt to lay the foundation for admissibility of certain documents under Rule 902(11), Cohen should plan to do so timely so that the government has "a fair opportunity to challenge" his certification before trial.  *See* Fed. R. Evid. 902(11).

[112] Cohen also urges the Court to bar the government from asserting any discovery defaults or violations from "untimely presentation of defense discovery."  ECF No. 238 at 1.   The Court will address such assertions when--and if--they are made.

dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Neither of Cohen's motions presents adjudicative facts; thus, his motions will be denied.

J.   Motion for Judicial Action

Cohen seeks "arrangements to have a daily transcript made of the trial proceedings, starting with the opening statement of the prosecution." ECF No. 212. The government opposes the motion because "[t]he government lacks funds to obtain daily transcripts and believes that public funds should not be used to provide such transcripts to [Cohen]." ECF No. 254. Cohen asserts that the government's argument lacks merit because it recently "spent almost [20] dollars to send him [seven] pieces of paper." ECF No. 283.

At the hearing, the Court informed the parties that they would have access to a live feed of the proceedings. Hr'g Tr. at 4-5. Because Cohen had been appointed a paralegal who may take notes at trial, the Court will provide a hard copy of the daily transcript. *Id.* at 4. Accordingly, Cohen's motion will be granted in part and denied in part.[113]

---

[113] Cohen also seeks to use his seized iPhones, iPads, laptops, and desktop computer during trial. ECF No. 173. However, Judge Sullivan has denied Cohen's motion to have the seized property returned to him, in part, because the government intends to

K.    Motion to Exclude Time under the Speedy Trial Act

The government moves to exclude time from November 17, 2014 to June 1, 2015 under the Speedy Trial Act.  ECF No. 67.  Cohen opposes the motion.  ECF No. 77.

Under 18 U.S.C. § 3164, the trial of a defendant who is detained pending trial "shall commence not later than ninety days following the beginning of such continuous detention."  18 U.S.C. § 3164(a)-(b).  "The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation."  *Id*. § 3164(b).

Section 3161(h) provides that certain "periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence," including

> [a]ny period of delay resulting from a continuance
> granted by any judge . . . at the request of the
> attorney for the Government, if the judge granted such
> continuance on the basis of his findings that the ends
> of justice served by taking such action outweigh the
> best interest of the public and the defendant in a
> speedy trial.

18 U.S.C. § 3161(h)(7)(A).  However, the Court must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."  *Id*.  Included

---

introduce seized property as evidence at trial.  ECF No. 290 at 4.  Thus, Cohen's request will be denied.

among the factors the Court may consider when deciding whether

to grant a continuance under § 3161(h)(7)(A) are:

(i)     Whether the failure to grant such a continuance
        in the proceeding would be likely to make a
        continuation of such proceeding impossible, or
        result in a miscarriage of justice.

(ii)    Whether the case is so unusual or so complex, due
        to the number of defendants, the nature of the
        prosecution, or the existence of novel questions
        of fact or law, that it is unreasonable to expect
        adequate preparation for pretrial proceedings or
        for the trial itself within the time limits
        established by this section.

(iii)   Whether . . . the facts upon which the grand jury
        must base its determination are unusual or
        complex.

(iv)    Whether the failure to grant such a continuance
        in a case which, taken as a whole, is not so
        unusual or so complex . . . would unreasonably
        deny the defendant or the Government continuity
        of counsel, or would deny counsel for the
        defendant or the attorney for the Government the
        reasonable time necessary for effective
        preparation, taking into account the exercise of
        due diligence.

18 U.S.C. § 3161(h)(7)(B).

This Court previously granted motions to exclude time until

November 17, 2014. *See* ECF Nos. 25, 45; *see also* ECF No. 72

(Order denying Cohen's motion to strike speedy trial orders).

The Court made findings that the ends of justice were served by

tolling and outweighed the interests of the public and the

defendant in a speedy trial. ECF No. 72 at 6-7; *see also Zedner*

*v. United States*, 547 U.S. 489, 506-07 (2006). The Court

further found that--as of November 25, 2014--52 days had elapsed on the 90-day speedy trial calendar. *Id.* at 15.

The government contends that the ends of justice are served by granting another continuance because of the ongoing nature of the investigation, the voluminous discovery "involving hundreds of thousands of pages of documents" and "extensive electronic data and media," the multiple motions filed by Cohen, changes in Cohen's representation, and the need "to develop an appropriate mechanism for the production and review of discovery in light of [Cohen's] decision to represent himself."  ECF No. 67 at 2-3. Cohen argues that the government's reasons for the continuance duplicate reasons asserted for prior continuances, that the government has not diligently reviewed discovery, and the charges are not complicated.  ECF No. 77 at 1-5.[114]

The Court finds that the interests of justice are served by the delay.  The third superseding indictment alleges a complicated five-year $100 million fraud on policyholders involving multiple Cohen-controlled entities subject to review by the Delaware and District of Columbia Insurance Commissioners, two accounting firms, and one rating agency, and multiple charges of money laundering, false statements to an insurance regulator, and obstructing justice.  *See* ECF No. 78.

---

[114] Cohen's opposition raises additional due process, Sixth Amendment, and speedy trial violations that the Court has addressed in Cohen's motions to dismiss the indictment.

As the multiple discovery-related motions and hearings show, the voluminous discovery has been complicated by the need for special procedures to accommodate Cohen's *pro se* status, his pretrial detention, and the protective orders in place. *See* ECF Nos. 112, 183, 185, 187, 200, 234. The discovery process is ongoing. Accordingly, the continuance is merited to ensure the parties have adequate time to prepare for trial. *See* 18 U.S.C. § 3161(h)(7)(B). The government's motion to exclude time from November 17, 2014 to June 1, 2015 will be granted.[115]

---

[115] Because the Court finds that the interests of justice are served by the delay, Cohen's motion to dismiss under 18 U.S.C. § 3161(c)(1) for failure to bring him to trial within 70 days of his arrest, ECF No. 152, must fail. However, even if the Court had declined to grant the government's motion under 18 U.S.C. § 3161(h)(7), Cohen's motion fails under § 3161(h)(1).

The Speedy Trial Act provides the government 90 days--notwith-standing periods of excludable delay under § 3161(h)(1)--to try defendants who are detained before trial. *See* 18 U.S.C. § 3164(b). Thus, Cohen's reliance on § 3161 is misplaced. This Court previously addressed Cohen's speedy trial concerns when it denied his motion to strike the speedy trial orders excluding time until November 17, 2014. *See* ECF No. 72. Since November 17, 2014, Cohen has filed 14 motions to dismiss the indictment, four motions to suppress evidence, a motion to reopen his detention hearing, requests for subpoenas *duces tecum*, and, as this Memorandum Opinion shows, an array of other motions and objections to Judge Sullivan's rulings. In total, Cohen has filed over 50 motions since the last speedy trial order elapsed, many of which have been ruled upon by Judge Sullivan or this Court, some of which required a hearing. April 1, 2015 was the deadline for pretrial motions; the evidentiary hearing for final determination was held on May 4, 2015. Thus, time since the last speedy trial order elapsed is excludable. *See* 18 U.S.C. § 3161(h)(1); *Henderson v. United States*, 476 U.S. 321, 326, 106 S. Ct. 1871, 1875, 90 L. Ed. 2d 299 (1986)(periods of delay enumerated in 18 U.S.C. § 3161(h)(1) were "intended to be

III. Conclusion

For the reasons stated above, the pretrial motions will be resolved as discussed.

_5/7/15_
Date

William D. Quarles, Jr.
United States District Judge

automatic"; § 3161(h)(1)(D)--then § 3161(h)(1)(F)--"exclude[s] all time between the filing of and the hearing on a motion whether that hearing was prompt or not"); *United States v. Ford*, 288 Fed. App'x 54, 58 (4th Cir. 2008) ("Specifically, delays resulting from plea negotiations, and pretrial motions, from the time of their filing through their disposition, are excludable."). As of the date of the Order accompanying this Memorandum Opinion, 38 days remain on the speedy trial calendar (90 days minus the 52 days that have run). Because Cohen's trial is scheduled to begin in less than that time, Cohen has not established a speedy trial violation, and his motion will be denied.