UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| Plaintiff, | * |
| v. | *   Criminal Action No. GLR-14-00310 |
| JEFFREY BRIAN COHEN | * |
| Defendant. | * |
| | * |

***

# MEMORANDUM OPINION

Pending before the Court is pro se Defendant Jeffrey Cohen's ("Cohen") Motion for Compassionate Release (ECF No. 773). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Motion is DENIED.[1]

## I.   BACKGROUND

On June 24 of 2014, Cohen was indicted for his acts in a lengthy fraud scheme. (ECF No. 1). A little over a year later on June 8, 2015, Cohen pled guilty to wire fraud, making false statements to an insurance regulator, obstruction of justice, and aggravated identity theft. (ECF No. 385).

---

[1] Due to the sensitive nature of the matters discussed in this memorandum, the Court will file a redacted version made available to the public. The unredacted version will be placed under seal.

On August 5, 2020, Cohen filed a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. (ECF No. 773). The Government filed an Opposition on November 9, 2020. (ECF No. 781). Cohen then filed a Supplemental Motion on November 10, 2020. (ECF No. 784). On November 24, 2020, the Government replied with a Supplemental Opposition. (ECF No. 787).

Thereafter, on December 22, 2020, this Court denied Cohen's Motion. (ECF No. 793). Cohen appealed for review to the Fourth Circuit on January 22, 2021. (ECF No. 794). On June 28, 2022, the Fourt Circuit vacated the order and remanded this case for a more detailed explanation of why the Court denied Cohen's Motion. (ECF No. 804).

On October 25, 2022, Cohen filed a Motion for Injunctive Relief requesting his medical records and programming history. (ECF No. 814). The Government then attached his records to its 2023 Supplemental Response in Opposition (ECF No. 835).

The Government filed its fourth Supplemental Response on September 8, 2023, (ECF No. 844), to which Cohen submitted a Reply to on October 6, 2023, (ECF No. 847).

## II.   STANDARD OF REVIEW

Customarily, a sentencing court "may not modify a term of imprisonment once it has been imposed." United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)). However, § 3582(c), or the compassionate release provision, empowered courts to use their discretion in deciding whether certain circumstances warranted a reduction. The First Step Act of 2018 further availed federal defendants routes to request compassionate release. Under the act, defendants may now directly file a motion for compassionate release in lieu of relying upon the Director of the Bureau of Prisons (BOP) to

motion on their behalf. See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018). However, a defendant must first make a showing that they have already taken the proper steps to exhaust their administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Only thereafter may a court reduce the term of imprisonment upon finding "extraordinary and compelling reasons warrant such a reduction" and considering applicable § 3553(a) sentencing factors. Id. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. Administrative Exhaustion

A defendant must "exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier" prior to moving for compassionate release. Id. § 3582(c)(1)(A). In the present case, whether Cohen met either criterion to motion for compassionate release is disputed. Cohen asserts that on April 22, 2020, he sent an email and wrote a letter requesting release to FCI Gilmer Warden Robert Hudgins. (Cohen Aff. at 11, ECF No. 773-2). However, there is no hard evidence of said email or proof of receipt of a written letter in the record.[2] Further, on October 27, 2020, after Cohen motioned for compassionate release, FCI Gilmer stated in an email "to date, I have I received/processed a [reduction in sentence] request from this inmate." (Email Ex. at 1, ECF No. 781-1). Cohen simply asserting that the "evidence

---

[2] The Court acknowledges Cohen submitted affidavits by himself and another inmate to administrative exhaustion, (see generally ECF Nos. 773-4; 773-5), but does not believe that suffices to prove Cohen met his burden.

exists" does not suffice. (Reply Gov't Opp'n at 5, ECF No. 797). Thus, because whether Cohen requested a sentence modification is disputed and he has not provided sufficient proof to the alternative, he has not met his burden for administrative exhaustion. Although this finding seemingly bars Cohen's Motion, the Court will proceed to address extraordinary and compelling reasons and the § 3553(a) sentencing factors to allow for meaningful appellate review.

B. **Extraordinary and Compelling Reasons**

As this Court has previously held in line with the growing consensus, 18 U.S.C § 3582 as amended grants courts with independent discretion to decide whether and under what circumstances present "extraordinary and compelling reasons" to modify a sentence. United States v. Wise, No. ELH-18-72, 2020 WL 2614816, at 5–7 (D.Md. May 22, 2020). While not binding, the United States Sentencing Guidelines (U.S.S.G) § 1B1.13 can aid in this analysis. The U.S.S.G provides examples of what constitutes "extraordinary and compelling reasons" including: medical conditions of the defendant; familial circumstances; where the defendant is a victim of abuse; and a catch-all "other reasons." U.S.S.G. § 1B1.13(2).

1. Medical Conditions of the Defendant

Cohen alleges he is eligible for compassionate release because of a particularized risk of contracting COVID-19. (Suppl. Mot. for Compassionate Release ["Suppl. Mot."] at 2–5, ECF No. 784). Review of Cohen's medical records do confirm that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which, according to the Centers for Disease Control and Prevention (CDC), puts him at

4

higher risk of getting sicker from COVID-19. (Med. R. at 11, ECF No. 835-5); see also COVID-19: People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The Government contends that Cohen's health is not severe enough to warrant a sentence reduction under the sentencing guidelines. (Resp. Opp'n Mot. Compassionate Release ["Opp'n Mot."] at 18, ECF No. 781).

There is no doubt that COVID-19 was and is still a serious concern, especially in enclosed prison populations. Nonetheless, at this stage of COVID-19, the widespread availability of vaccines tips the balance against finding Cohen's risk sufficient to warrant extraordinary and compelling reasons. See United States v. Langford, No. JKB-15-0539, 2022 U.S. Dist. LEXIS 82695, at *2 (D.Md. May 6, 2022) (concluding the defendant's potential cancer, hypertension, and obesity was not sufficient). "For the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an extraordinary and compelling reason for immediate release." Id. at *3 (internal citations and quotation marks omitted). Further, on May 11, 2023, COVID-19 was uncategorized federally as a public health emergency. COVID-19: End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html.

The vaccination records and COVID-19 rates at both FCI Gilmer and FCI Otisville also illuminate the positive trajectory of the pandemic's effects. At present, Cohen's old facility FCI Gilmer has 1554 inmates vaccinated, only one inmate testing positive for

COVID-19, and one death. BOP COVID-19 Statistics, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed November 13, 2023). At FCI Otisville, where Cohen currently resides, 895 inmates have been vaccinated, none testing positive, and one death has occurred. Id. Also, unlike in many other cases, Cohen never contends that he was actually infected with COVID as a result of his imprisonment. Taken all together, his increased risk of contracting COVID-19 does not qualify as extraordinary and compelling circumstances.

Additionally, it appears that Cohen's health is monitored and well managed. (See generally ECF No. 835-5). His detailed medical records reflect the medical concerns he raised in his Motion for Compassionate Release along with prescribed treatments. (Id.). ▓▓▓▓▓▓ is listed in Cohen's medical records, (Med. R. at 2), but in Cohen's affidavit, (Mot. at 33, ECF No. 773-1), he merely states there is a family history of ▓▓▓▓.[3] Further, the medical notes imply that he is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ because Cohen "want[ed]" to, not necessarily because it was needed. (Med. R. at 2). Moreover, his ▓▓▓▓▓ concern was ruled out after being screened. (Id. at 12). His records also reflect that as of April 4, 2023, he no longer ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Id. at 4). This leads the Court to believe that his health is appropriately cared for and he is not "at risk of serious deterioration in health or death." See U.S.S.G. § 1B1.13(b)(1)(C).

2. Familial Circumstances

---

[3] He made a similar familial history claim regarding ▓▓▓▓. (Cohen Aff. at 11).

6

U.S.S.G. § 1B1.13(b)(3)(C) provides that where the defendant would be the only available caregiver for an incapacitated parent, courts can weigh it in determining whether to modify a sentence. Cohen alleged the need to support his father after undergoing heart surgery as a basis for early release. (See generally ECF No. 828; ECF No. 830). ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3. Where Defendant is a Victim of Abuse

Cohen argues that he received poor treatment under the COVID-19 lockdown, including being fed nutritionally insufficient foods and enduring inhumanely lengthy periods of confinement. (Mot. at 14–18). Nevertheless, Cohen's move to a different facility, FCI Otisville, moots his arguments about the conditions and treatment at his former facilities, FCI Gilmer and FCI Hazelton. Although the Court acknowledges the arguments made by both parties, the U.S. Constitution limits the authority of federal courts to adjudicating "Cases" and "Controversies." U.S. Const. art. III, § 2. As part of this limitation, the Court must ensure "that a live dispute exists between the parties" before it passes on the substantive issues before it. Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 161 (4th Cir. 2010). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the [case]," Already, LLC v. Nike, Inc., 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013), courts must dismiss the case as moot when the parties

7

no longer have "a legally cognizable interest in [its] outcome," Norfolk S. Ry., 608 F.3d at 161. Therefore, the Court recognizes Cohen's claims against his former facilities, mainly FCI Gilmer, but a sentence reduction will not address an issue that no longer exists. Furthermore, as stated above regarding Cohen's assertions of poor medical care, his medical records suggest that his health concerns are being addressed. (See generally ECF No. 835-5).

C.  **Section 3553 Sentencing Factors**

Even if a defendant establishes that extraordinary and compelling reasons exist to support a sentence reduction, a court "must consider the 18 U.S.C. § 3553(a) factors to determine whether, in its discretion, a reduction of sentence is appropriate." An exhaustive analysis of all the § 3553(a) factors is not required nor must a court address each of the defendant's arguments. United States v. Jenkins, 22 F.4th 162, 170 (4th Cir. 2021). Instead, the touchstone inquiry is whether the district court set forth enough to convey to the appellate court that it considered the parties' arguments and has a reasoned basis for exercising its own legal decision-making authority. High, 997 F.3d at 190. The § 3553(a) factors include:

> (1) the nature of the offense and the characteristics of the defendant;
> (2) the need for the sentence imposed;
> (3) the kinds of sentences available; and
> (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Starting with the nature and circumstances of the offense, the gravity of Cohen's crimes is significant. Through his insurance company, Cohen fraudulently obtained over

8

100 million dollars in insurance premiums from more than 3,000 policyholders over almost a decade. (Plea Agreement at 11, ECF No. 385). To carry out the theft, he stole identities including a bank employee's, falsified multiple documents, forged an attorney's signature, and misrepresented the company's bookkeeping. (Id. at 11–15). He created fake websites, emails, and at least one fake company. (Id.) More heinously, he threatened people in an attempt to conceal his crimes. (Id. at 14–15).

Turning to his history and characteristics, there is no indication that Cohen is ignorant, came from impoverished circumstances, nor were these crimes committed while he was a youth–which could more support a lack of developmental understanding. See United States v. Moses, No. CCB-02-0410-2, 2023 U.S. Dist. LEXIS 118738, at *15 (D.Md. July 10, 2023) (defendant was enlisted into dealing drugs as a teenager after being raised by drug-addicted parents); see also United States v. Mariano, No. 5:14-cr-00007, 2023 U.S. Dist. LEXIS 177577, at *21 (W.D.Va. Oct. 2, 2023) (defendant was raised in poverty, dealt with food insecurity, had limited language skills, and only completed the sixth grade). Cohen's crimes were committed in adulthood, he appears to come from a good family, and is very intelligent. Cohen did not have prior criminal history, which aided him in determining the appropriate sentence, but he committed multiple crimes of grand magnitude.

Moreover, regarding Cohen's characteristics, the Court would be remiss not to mention other evidence presented that speaks to this factor. Although formal charges were not brought against Cohen for the following, based on the conceivable evidence, Cohen was "calm[ly]" and "methodically" planning to harm two public officials. (Opp'n Mot. at 8–9). Among other acts, he allegedly purchased the addresses and family information for

adversaries in his civil litigation, recorded himself driving to "scout out" the public officials' homes, purchased weapons, and searched how to build a bomb. (Id.). Further, he created websites titled "Y-I-DID-IT.com" & "YIDIDIT.com" and stated he believed murder was not wrong when done to "cull[] the weak." (Id. at 9–10). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ statements and concerns also puts into question the amount of familial support Cohen states he would have upon being released early. (Suppl. Mot. at 10).[5]

Looking next to the need for the sentence imposed to provide just punishment, reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and provide rehabilitative services, the Court is satisfied with the thirty-seven-year sentence as prescribed by Judge Quarles. (Sentencing Tr. at S-VII-85:13, ECF No. 622). Cohen pled guilty to wire fraud with a term of imprisonment of 240 months, false statements to an insurance regulator for 180 months, obstruction of justice for 240 months, and an aggravated identity theft count for twenty-four months. (Id. at S-VII-85:5–12). As explained, Cohen committed offenses of great severity. Although the Court

---

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Second Merill Aff. at 1).
[5] Familial support is another sentence reduction consideration.

recognizes the significance of the sentence, it is warranted to convey the seriousness and the duration of the crimes committed. That is not to say that Cohen's efforts towards rehabilitation while in prison are not admirable and given much weight in this factor. His use of prison resources and his good behavior are commendable. (Mot. at 6). Yet, even though his good behavior is a motivating factor in favor a reduction, it does not move the needle enough. The sentence as imposed ensures that Cohen will continue to receive opportunities for rehabilitation whilst ensuring the public safety, and hopefully deter him from criminal acts in the future.

Further, Cohen's sentence comports with the kind of sentences available. Judge Quarles' calculations were within the sentencing guideline ranges, and he found that Cohen's crimes supported a total offense level of fifty-one or life imprisonment. (Sentence Computation at 1, ECF No. 577). Cohen's sentence ultimately amounted to thirty-seven years, twenty years below the permitted statutory maximum. (Sentencing Tr. at S-VII-19:16–18). To date, he has only served nine of his thirty-seven-year sentence, equating to roughly twenty-four percent. See United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020) (taking the significant time the defendants already served into the sentence reduction evaluation).

Next, the Court examines the need to avoid unwarranted sentencing disparities. Cohen contends that his sentence is disparate from that of those who committed similar crimes and cites several cases. (Reply Gov't Opp'n. at 4; see also Reply Gov't Suppl. at 5–7, ECF 847). The Government asserts that the cases Cohen cited are factually dissimilar and cannot be compared. (Gov't Second Suppl. Resp. at 8–14, ECF No. 844). Upon consulting the

11

provided cases, this Court agrees that the cases are inapposite and not similar enough to use them as a basis to find sentencing disparities. Among other distinctions, the cases cited involve defendants with significantly higher or older sentences, different histories and characteristics, different crimes and policy considerations, served more of their sentence, or co-defendants where the movant received a greater sentence for the same joint crimes. Additionally, because Cohen was subject to a sentence falling within the same guideline ranges as if he were sentenced today for the same conduct, there is no gross disparity between him and similarly situated defendants to mitigate.[6]

Finally, Cohen also argues that the sentence imposed by Judge Quarles was incorrect or devoid of necessary and accurate attenuating considerations in his favor. (Reply Gov't Opp'n. at 6–8; see also Reply Gov't Suppl. at 3). Although this Court may address sentencing disparities across defendants as part of a § 3553 analysis, a motion for compassionate release is not the appropriate means to question alleged improper sentencing. A defendant's "attempt to collaterally attack his convictions and sentence via a compassionate release motion ignores the established procedures for doing so." United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022). The sole remedy for challenging a federal conviction or sentence after the period for direct appeal has ended is 28 U.S.C. § 2255. Id. When § 2255 is inadequate or ineffective, the defendant may file a 28 U.S.C. § 2241 habeas corpus petition.[7] Id. Regardless of how a defendant characterizes his request for relief, the

---

[6] Even if there were changes to the guidelines, such changes would not make a difference when evaluating the § 3553 factors.

[7] Yet, "a defendant cannot use § 2255(e)'s savings clause to file a § 2241 motion -- merely because an individual has been unable to obtain relief under [§ 2255] or because

substance of the motion's request controls. Id. If in substance the conviction and/or sentence is attacked, the filing is subject to § 2255. Id. For these reasons, this argument cannot be taken into consideration to determine if Cohen is eligible for a sentence reduction.

## IV. CONCLUSION

For the reasons stated in this Memorandum Opinion, Cohen's Motion to Compassionate, (ECF No.773), is denied. A separate Order follows. Entered this 27 day of November 2023.

Very truly yours,

/s/
George L. Russell, III
United States District Judge

---

[he] is procedurally barred from filing a § 2255 motion." Id. at 271 (quoting In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (internal citations omitted).